ERNEST V. APPLEBY *vs.* ST. PAUL CITY RAILWAY Co.

Argued by appellant, submitted on brief by respondent, June 12, 1893. Reversed July 14, 1893.

**Passenger Wrongfully Ejected from Street Car.**

> The plaintiff, a passenger on defendant's street-car line, paid his fare, and received a transfer check which entitled him to continue his journey by the "next" connecting car on another line of the same company. He took the next car on the connecting line, and the conductor took up his transfer check. Without notice to the plaintiff, this car was taken off, after going a short distance. The conductor having disappeared, the plaintiff was informed by the driver of that car that he should take the next passing car. He did so, but was put off by the conductor of that car because he had no transfer check, and refused to pay fare again. *Held*, that plaintiff showed, *prima facie*, a right to recover for the conduct of the defendant's agents, leading to and including the expulsion.

Appeal by plaintiff, Ernest V. Appleby, from an order of the District Court of Ramsey County, *J. J. Egan*, J., made January 6, 1893, denying his motion for a new trial.

*Thompson, Gates & Thompson* and *Cyrus J. Thompson*, for appellant.

*McCafferty & Noyes*, for respondent.

DICKINSON, J. This action is for the recovery of damages for the forcible expulsion of the plaintiff from a street car of the defendant on its Selby avenue cable line. At the trial the court dismissed the action when the plaintiff rested his case. We shall only have to consider whether the evidence showed that the expulsion of the plaintiff from the car, in connection with the circumstances preceding it, was wrongful, so that the case should have gone to the jury.

Attention will be directed to what may conveniently be called two lines of street railway, connecting on Selby avenue at a cross street called Milton street. The westerly of these lines is operated by electric power; the easterly or cable line, by a cable. The tracks of the two lines are continuous, but the cars of each line stop at Milton street; the passengers changing cars at that point,

which may be considered as the eastern end of the electric line, and the western end of the cable line. The cable line extends east from Milton street, along Selby avenue and other streets, to Broadway in the centre of the city. The "power house," so called, where is the machinery by which the cable line is operated, is some seven or eight blocks east of Milton street. Here, also, cars are housed and repaired. Passengers going east on the electric line pay their fare to the conductor on that line. This entitles them to transfer checks, as evidence of such payment, and upon transfer to the cable cars such checks entitle the passengers to continue their passage over the cable line to its eastern end, at Broadway. Passengers are required, at the transfer point, to take "the next car departing on the connecting line upon which it [the transfer check] is to be used." The plaintiff boarded an electric car, going east, his destination being a point on the cable line east of the power house. He paid his fare, and received a transfer check. When the car arrived at the transfer place at Milton street, a cable car was there, just about to start, going east. The plaintiff, with other passengers, got on it, and forthwith proceeded eastward. The conductor took up the transfer checks. At the power house the car stopped, and was taken off the line, and run into the building; for what reason or purpose, does not appear. It does not appear that this was a usual proceeding, or that the passengers were in any manner notified that the car was not to go over the line to its end. Indeed, the only inference which can be drawn from the circumstances, as presented by the evidence, is that the plaintiff was justified in assuming that the car was to go over the line in the usual manner. His testimony is that he had no intimation to the contrary. When the plaintiff saw that the car was being taken off at the power house, the conductor had gone; and, upon inquiry addressed to the driver of the car, the latter told him he would have to take the next car, which was just then approaching from the west on the same line. The plaintiff did so. The conductor on that car demanded fare from the plaintiff, although the latter explained the fact that his transfer ticket had been taken up by the conductor of the car that had just been taken off at the power house. The plaintiff refusing to pay again, he was then forcibly put off.

The facts thus stated presented a case which would have justi-
fied a verdict for the plaintiff.  He had paid the proper fare, and
was entitled to ride on the cable line, to its end.  It is to be kept
in mind that the action is not against the conductor, for the expul-
sion, nor does the right of action rest upon the bare fact of the ex-
pulsion.  The cause of action set forth in the complaint covers the
whole transaction above stated; and the inquiry is whether, upon
the whole case, the defendant appears to have neglected or violated
its duty towards the plaintiff, to his injury.  If it be said that,
since the plaintiff could present no proper evidence of his right to
ride, it was the duty of the conductor to put him off, it may be
answered that the defendant, and not the plaintiff, may well be
deemed at fault for that condition of things.  That is one of the
grounds upon which, in part, the defendant may be held responsi-
ble.  Even though the conductor, in ejecting the plaintiff, may
have done only what was apparently (to him) his duty, it does not
follow that the defendant is not responsible therefor.  It would
be responsible if, by its previous neglect of duty towards the pas-
senger, it had justified him in assuming to continue his journey
on a car from which the conductor, in accordance with the regula-
tions of the defendant, should expel him for nonpayment of fare.
*Pine* v. *St. Paul City Ry. Co.*, 50 Minn. 144, (52 N. W. Rep. 392;) *Mur-
dock* v. *Boston & Albany R. Co.*, 137 Mass. 293; *Lake Erie & W. Ry.
Co.* v. *Fix*, 88 Ind. 381, and cases cited; *Kansas City, M. & B. R. Co.*
v. *Riley*, 68 Miss. 765, (9 South. Rep. 443;) *Philadelphia, W. & B.
R. Co.* v. *Rice*, 64 Md. 63, (21 Atl. Rep. 97;) *Chicago, B. & Q. R.
Co.* v. *Griffin*, 68 Ill. 499.  And under the circumstances the jury might
have reasonably found that the defendant's conduct, through its
agents, had justified the plaintiff in taking this car.  The plain-
tiff, we repeat, was entitled to be carried over the cable line.  He
might presume that proper means, and a proper system or prac-
tice, had been provided for such service.  He had done all
that was required of him, at least prior to the time when he
left the car taken off at the power house to get on the other.
It is the duty of the carrier to give to its passengers such in-
structions or directions as to its own system or course of conduct
as may be reasonably necessary to enable them to pursue their
journey.  *Dwinelle* v. *New York Cent. & H. R. R. Co.*, 120 N. Y.

117, (24 N. E. Rep. 319.) When it became apparent that the car was being taken off without previous notice, the passengers had a right to expect information from some one as to how they were to proceed on the journey. The conductor seems to have then disappeared, and when they were informed by the car driver that they should take the next car they were justified in acting on that information. We do not decide whether they might not have done this without such direction. They are not presumed to have known that passengers from cars thus taken off were not allowed to resume the journey by the next passing car. It was the duty of the defendant to make some provision for them, and not only was this the course most naturally to be expected, but there seems to have been no other way provided, and the only way in which the plaintiff could avail himself of his right to be carried was to take the passing car, as he did do. The case is distinguishable from those where one enters a carriage, knowing that he is without such evidence of his right of passage as the reasonable regulations of the carrier require. In brief, it might have been found by the jury that the plaintiff was prevented from the enjoyment of his right to be carried, and was subjected to expulsion from the car, not by reason of any fault on his part, but by the fault of the defendant; and in such a case there would be a right of recovery. We are aware that our decision is not in apparent harmony with all of the authorities. Perhaps the seeming conflict of authority has resulted either from differences in the cases presented, or in the different views taken as to the real causes of action relied on. A distinction is to be observed between cases where courts, whether justified by the pleadings or not, have regarded the right of action as resting upon the bare fact of expulsion by a conductor or agent whose duty (to the carrier) required him to expel the passenger, and cases like this, where, as we consider, the cause of action is the conduct or neglect of the defendant, which results in, and also includes, the expulsion. It follows that the court erred in dismissing the case. The plaintiff showed a right of action. We do not consider what the measure of his recovery may have been, for that is not here involved.

Order reversed.