No. 1,592.

## EVANSVILLE AND TERRE HAUTE RAILROAD COMPANY *v.* CATES.

RAILROAD.—*Damages.*— *Ejecting Passenger.*—*Ticket.*— *Explanation of Passenger.*—A railroad company is liable for damages in eject-ing a passenger, who presents to the conductor a ticket calling for an intermediate station other than his destination, where the mis-take as to the ticket was due entirely to the fault of the ticket agent, and the passenger explained the situation to the conductor. Dissenting opinion by Ross, J.

From the Sullivan Circuit Court.

*J. E. Iglehart, E. Taylor* and *J. T. Hays,* for appel-lant.

*A. D. Leach* and *W. S. Maple,* for appellee.

GAVIN, J.—The appellee, desiring to travel from Evansville to Terre Haute over the appellant's railroad, called upon its agent for a ticket to Terre Haute and paid him the regular price for such a ticket. By mis-take the agent gave him a ticket to Vincennes only, believing it to be that for which he had asked, and without any fault or negligence upon his part, appellee boarded appellant's train and surrendered his ticket. After passing Vincennes the conductor demanded addi-tional fare, as his ticket only called for Vincennes. He explained that he had bought and paid for a ticket to Terre Haute and had given it to him and had no money to pay additional fare. Producing neither ticket nor money, he was ejected from the train, and for this sued and recovered damages in the court below.

The case stated is such as we are required to consider established by the general verdict in appellee's favor, taken in connection with answers to interrogatories.

Construing all the averments of the complaint together, we think it was not intended to count upon the ejection of a passenger who had a ticket good upon its face, but that the gist of the complaint is, rather, the wrongful ejection of one actually entitled to be carried as a passenger upon the ticket presented. Such we think was evidently the construction placed upon it by both the court and parties as indicated by the briefs and verdict and interrogatories. The case will not therefore fall upon the theory that there is a fatal variance because it appears that the ticket was not good upon its face for the ride demanded.

The position of appellant's learned counsel is that the face of the ticket is conclusive as to the rights of the passenger and that the conductor is neither required nor permitted to listen to and regard any explanations or statements by which the passenger may seek to establish a right variant therefrom.

In this contention counsel are supported by the statements and decisions of courts and judges of high standing. *Frederick* v. *Marquette, etc., R. R. Co.*, 37 Mich. 342; *Hufford* v. *Grand Rapids, etc., R. W. Co.*, 53 Mich. 118; *Van Dusen* v. *Grand Trunk R. W. Co.*, 97 Mich. 439; *Mahoney* v. *Detroit Street R. W. Co.*, 93 Mich. 612 (18 L. R. A. 335); *New York, etc., R. W. Co.* v. *Bennett*, 1 U. S. C. C. of App. 544; *Poulin* v. *Can. Pac. R. W. Co.*, 3 U. S. C. C. of App. 23; *McKay* v. *Ohio River R. W. Co.*, 34 W. Va. 65 (9 L. R. A. 132); *Hall* v. *Memphis, etc., R. Co.*, (U. S. C. C. Tenn.), 15 Fed. Rep. 57; *Grand Trunk R. W. Co.* v. *Beaver*, 22 Can. Sup. Ct. Rep. 498; *Yorton* v. *Milwaukee, etc., R. W. Co.*, 54 Wis. 234; *Chicago, etc., R. W. Co.* v. *Griffin*, 68 Ill. 499; *Baggett* v. *Baltimore, etc., R. W. Co.*, (D. C.) 22 Wash. Law Rep. 441; *Bradshaw* v. *S. Boston St. R. W. Co.*, 135 Mass.

407; *Peabody* v. *O. R. & N. Co.*, 21 Ore. 121 (12 L. R. A. 23).

Other authorities, however, declare that in proper cases the conductor must heed the statement and explanation of the passenger as to his rights, and that one who has requested from the company, and paid for, a ticket to a certain place, and who boards the train, without fault, believing he has obtained that which he sought, is entitled to ride thereon, even though the agent has not given him the proper evidence of his right to ride. *Georgia R. Co.* v. *Olds*, 77 Ga. 673; *Georgia R., etc., Co.* v. *Dougherty*, 86 Ga. 744; *Kansas City, etc., R. W. Co.* v. *Riley*, 68 Miss. 768 (13 L. R. A. 38; *Hufford* v. *Grand Rapids, etc., R. R. Co.*, 64 Mich. 631, wherein the court seems to reverse the trial court for instructing the jury in accordance with the doctrine laid down by the Supreme Court in the same case in 37 Mich. *Texas, etc., R. W. Co.* v. *Dennis* (Tex.) 23 S. W. Rep. 400; *St. Louis, etc., R. W. Co.* v. *Mackie*, 71 Tex. 491 (1 L. R. A. 607); *Missouri, etc., R. W. Co.* v. *Martino*, 2 Tex. Civ. App. 634; *Burnham* v. *Grand Trunk, etc., R. W. Co.*, 63 Me. 298; *Ellsworth* v. *Chicago, etc., R. W. Co.* (Ia.), 63 N. W. Rep. 584 (29 L. R. A. 173); *Yorton* v. *Milwaukee, etc., R. W. Co.*, 62 Wis. 367, which it is difficult to reconcile with the same case in 54 Wis. *Phila., etc., R. W. Co.* v. *Rice*, 64 Md. 63; *Appleby* v. *St. Paul City R. W. Co.* (Minn.) 55 N. W. Rep. 1117; *Murdock* v. *Boston, etc., R. R. Co.*, 137 Mass. 293; *New York, etc., R. W. Co.* v. *Winters, Admr.*, 143 U. S. 60.

These authorities do not all directly sustain the propositions to which they are cited, and in some, especially of those first set forth, the statements relied on are pure *dicta*, yet they may be thus lined up as

favoring more or less directly the one or the other of two divergent rules. We deem it a hopeless task to undertake to reconcile all of them, and a needless one to take up each case and examine and distinguish it from its fellows where distinguishable.

Thus far we have considered decisions outside of Indiana. In our own State, however, the current of adjudications has been, from an early day, against the position assumed by appellant. *Pittsburgh, etc., R. W. Co.* v. *Hennigh*, 39 Ind. 509; *Toledo, etc., R. W. Co.* v. *McDonough*, 53 Ind. 289; *Lake Erie, etc., R. W. Co.* v. *Fix*, 88 Ind. 381; *Pennsylvania Co.* v. *Bray*, 125 Ind. 229; *Chicago, etc., R. R. Co.* v. *Graham*, 3 Ind. App. 28; *Cleveland, etc., R. W. Co.* v. *Beckett*, 11 Ind. App. 547.

These cases establish that where a passenger surrenders his ticket to the conductor and fails to receive any check in return, the company is liable for his ejection by a subsequent conductor in charge to whom he refuses to pay fare or present any ticket or check entitling him to ride; so also where the passenger by the direction of the conductor transfers from one train to another upon the assurance that he can ride on the first conductor's train-check which was in fact good only for his own train; also where the holder of a return coupon ticket, receives back from the conductor the wrong coupon which, without discovering the mistake, he presents upon the return trip.

In all these instances it was held that the conductor must heed the explanation of the passenger who was without the proper evidence of his right to ride through the mistake of the company's agent and not by reason of his own fault.

In the case last referred to (the Beckett case), it is adjudged that one boarding a train without a ticket by

reason of the company's negligent failure to afford him an opportunity to buy one, cannot be required to pay an excess over the ticket fare, but is entitled to be carried at the regular lowest ticket rate, and the conductor must listen to his explanation of the circumstances, or the company must respond if he eject the passenger.

It was there said: "The first wrong was by appellant in failing to furnish appellee a ticket upon his reasonable demand therefor, and it must answer for all the consequences naturally following from that wrong. The company cannot be permitted to justify its own wrongful conduct by the fact that its servants were acting according to its directions or rules.

"Although the conductor may be acting strictly according to the rules of the company, and doing that and only that which, under its rules, he is authorized to do, it by no means follows that his conduct is rightful toward the passenger. Between himself and the company its rules will justify the conductor, but not so as between himself as the company's representative, and the passenger."

In *Chicago, etc., R. R. Co.* v. *Conley*, 6 Ind. App. 9, 16, it was said by this court: "It is true that where the passenger has no ticket, or has a ticket so imperfect that it furnishes no sufficient evidence of being genuine, and the conductor has nothing to determine the passenger's rights from except his explanations, he is not bound to take the same as true unless his failure to have a ticket, or a perfect ticket, was due to the company's fault."

Again in *Chicago, etc., R. R. Co.* v. *Ault*, 10 Ind. App. 661, the court said through Reinhard, J.: "If the appellee really purchased and paid for a first-class passenger ticket, with a return coupon attached, at the time he testified he purchased it, and presented the

same to the conductor, it would strongly tend to prove that his expulsion from the train was wrongful, no matter what the form or wording of the ticket may have been."

Carrying out the principles underlying these decisions, we do not see how it is possible to escape the conclusion that where a passenger calls for and pays for a ticket to one place, but is by the mistake of the company's agent given a ticket different from that desired, with which he, without fault, boards the train, believing he has the proper ticket, he is entitled to ride thereon the distance for which he has paid, upon making proper explanation, and if the conductor refuses to heed his statements, the company must respond. He has paid for his ride and presented in good faith the only evidence given him by the company of his right to make the journey. If the company has not furnished him the proper token to convey the fact to the mind of its conductor, the blame and the consequences thereof must both rest upon the company, which is in fault, rather than upon the passenger who is not.

In thus holding, we are in harmony with the views of our Supreme Court as expressed in *Godfrey* v. *Ohio, etc., R. W. Co.,* 116 Ind. 30, wherein it was decided that where a passenger received from the station agent the wrong ticket, being the reverse of that for which he asked, he could not ride thereon four months after his discovery of the mistake, but Judge Mitchell says: "It is quite probable, if the plaintiff, without having had ample opportunity to correct the mistake after discovering it, had offered the ticket on the first trip, and had been refused passage, he would have been entitled to recover for any injury, in case he had been ejected after having done all he reasonably could to rectify the

mistake.    The case would then have fallen within the principles declared in *Lake Erie, etc., R. W. Co.* v. *Fix*, 88 Ind. 381, and cases of that class."

It is sometimes said that it is impracticable for the conductor to investigate, because while he is doing so the passenger may reach his destination and be gone, and the company cannot pursue him without disproportionate inconvenience and expense.

To this it may be answered that this is not much more impracticable than for a passenger to pay a second time who has no more money; nor is it, perhaps, much more inconvenient for the company to pursue the passenger for his fare than for the passenger to go to the expense and trouble of convincing the company that its official has made a mistake and compelling the return of the money improperly exacted.    As a rule, the amount involved and the expense and trouble required would be widely disproportionate.

If it be said that the conductor cannot inform himself and learn the real truth, we may answer that the opportunity is fully as good as in any of the other cases where it is held that he must listen to and heed the passenger's explanation.

As it seems to us, every objection that may be offered to our holding, whether it be inconvenience to the company or conductor, impracticability of ascertaining the truth, or violation of the company's rules by the conductor, all are equally tenable and appropriate in these other cases.

It is true these other cases are distinguishable from the one in hand in that the facts are somewhat different, as, in truth they differ from one another; yet the cardinal principle governing them is the same, and that we take to be this:    The company has a right to enforce against the passenger its reasonable rules and regula-

Evansville and Terre Haute Railroad Company *v.* Cates.

tions: *Provided* his failure or inability to comply therewith is not brought about by its own fault.

The rule for which appellant contends is largely founded upon its supposed necessity as a requisite to the proper management of its trains; yet we have heard no general complaint of the impossibility of running trains in those States where the opposite rule has been adopted.

We may say, also, that in most of those courts which adhere to the rule asserted by appellants, those cases in our own State upon which we rely would have been decided differently from the determination of our courts.

We have referred to several Federal Court decisions sustaining appellant's views, some of which state quite strongly the rule for which its counsel contend. To show the opinion of the highest Federal Court upon some of the propositions therein advanced, we refer especially to the case of *New York, etc., R. W. Co.* v. *Winters, Admr., supra.* In this case the passenger purchased a ticket upon which the agent told him he could stop over by speaking to the conductor. This he did. The conductor punched his ticket and returned it with the statement that this would be sufficient and he could use the ticket on another train after stopping over. This he undertook to do, and was ejected because he had no proper ticket and would not pay fare.

The following instruction was declared to correctly state the law:  " 'That if the plaintiff's testimony was true in regard to what took place between himself and the ticket agent in Boston, and afterwards with the first conductor on defendant's train, and if the plaintiff, when he bought the ticket in Boston, informed the ticket agent of his wish to stop off at the Olean station, and was then told by the agent that he would have to

speak to the conductor about that, and between Bing-hamton and Olean the plaintiff informed the conductor that he wished to stop over at Olean, and the conductor, instead of giving the plaintiff a stop-over ticket, punched the plaintiff's ticket and told him that was sufficient to give him the right to stop over at Olean, and afterwards to use the punched ticket between Olean and Salamanca, then, whatever the rules and regulations of the company were, the plaintiff was rightfully a passenger on the train at the time of his expulsion, and the conductor had no right to put him off for not paying his fare, and the company was liable for the act of the conductor.' "

The court says further, referring to its holding that the action of the last conductor was unwarranted:

"The reason of such rule is to be found in the principle that where a party does all that he is required to do, under the terms of a contract into which he has entered, and is only prevented from reaping the benefit of such contract by the fault or wrongful act of the other party to it, the law gives him a remedy against the other party for such breach of contract." A recovery of $10,000 was therein affirmed.

Our conclusion is also in accord with that set forth in the text of the latest (1894) edition of Wood on Railroads, Vol. 3, section 349: "Where the passenger asks and pays for a certain ticket, and the station agent by mistake gives him a different one, which does not entitle him to the passage desired, the conductor has no right to expel him, and the company is liable in damages if he is expelled. The passenger has a right to rely on the agent to give him the right ticket. There are authorities which hold the other way, but it seems that their views are indefensible."

In Hutchinson on Carriers, section 580, the passen-

ger's right to indemnity for all the resultant injury in cases like this is recognized and apparently approved, but is placed upon a somewhat different basis.

The doctrine which we assert meets the approval of the editor of the Am. and Eng. Ency. of Law, Vol. 25, p. 1075.

Judgment affirmed.

Filed October 16, 1895; petition for rehearing overruled January 10, 1896.

## DISSENTING OPINION.

Ross, J.—I cannot concur in the holding of the majority that the answers to the interrogatories do not overcome the general verdict.

The ticket received by the appellee from appellant's ticket agent entitled him to a passage from Evansville to Vincennes, and to that extent he was rightfully on appellant's train, and the conductor was bound to accept his ticket and carry him to that point.    Beyond Vincennes he had no right to be upon the train unless he either produced another ticket issued to him by the railroad company, evidencing his right to ride farther or paid his fare.

His right to be upon the train and to passage depended upon his either paying *to the conductor* the regular fare from the point of embarking to his destination or the production of a ticket issued to him by an authorized agent of the company, which on its face called for a passage from the former point to the latter.    And I may add that all the courts recognize it as a rule of "passenger traffic," that no person has a right to passage on a train without paying fare, unless a ticket or other evidence of a right of transportation is presented to the conductor.

In order that we may properly apply the law to the

facts in this case it is necessary to determine first the theory upon which the complaint proceeds. It is in two paragraphs and reads as follows :

First paragraph. "The plaintiff complains of the defendant and alleges, that the said defendant is a railroad corporation organized and existing under the laws of the State of Indiana, and that as such corporation (on the 19th day of January, 1894), the said carrier of passengers for hire was then and there, as such, operating a line of railroad between Evansville, Indiana, and Terre Haute, Indiana ; that on said day the said plaintiff purchased from said defendant a ticket for the sum of three dollars and thirty cents ($3.30), which said sum of money the said plaintiff paid the said defendant then and there for said ticket entitling him to passage on said road from Evansville, Indiana, to Terre Haute, Indiana, a station on said road, which said Terre Haute station was then and there a regular stopping place for its trains, and then and there at Evansville, Indiana, on the 19th day of January, 1894, the said plaintiff with his said ticket in his possession took passage on the said defendant's cars and train for said station at Terre Haute, Indiana, and the train on which plaintiff so took passage as aforesaid, was accustomed to and did go to Terre Haute, Indiana ; that in consideration of plaintiff's buying said ticket as aforesaid, the said defendant then and there at the time of said purchase promised and agreed to carry the plaintiff as a passenger from Evansville, Indiana, to Terre Haute, Indiana ; that soon after said train of the defendant, on which plaintiff took passage as aforesaid, left Evansville, Indiana, the said defendant, by its conductor of said train, took up from the plaintiff his said ticket ; that immediately after said train passed the station of Vincennes, Indiana, the said conductor of the defendant on said train

came to the plaintiff and told him, the plaintiff, that he should have got off and left the train at Vincennes, Indiana, and ordered him, the plaintiff, to get off at the next station ; that plaintiff then informed the said conductor fully that he had purchased and paid for a ticket to Terre Haute, Indiana, as aforesaid, but the conductor denied this, and insisted on plaintiff getting off at the next station ; that other persons on the train who were present at the time plaintiff purchased said ticket as aforesaid, also then and there informed said conductor of the fact of said purchase of said ticket by said plaintiff as aforesaid, but said conductor still denied it and refused to believe the plaintiff and said other persons, and insisted on plaintiff getting off at the station, which the said plaintiff declined and refused to do ; that thereupon, upon the arrival of said train at the next station, to-wit: the station of Oaktown on defendant's said road in the night time, the said defendant by its said conductor and its brakeman on said train by force and arms and with violence, wrongfully, wilfully, unlawfully and maliciously picked up the plaintiff and forcibly dragged him out of and from said train, and put him upon the platform at said station of Oaktown, Indiana, and left him then and there in the night time, and refused to carry him to Terre Haute, Indiana, and that after so putting this plaintiff, off as aforesaid, the said defendant's train pulled out and went to Terre Haute, Indiana ; that said plaintiff is and was, at the time aforesaid, a cripple, and had taken his shoes off on the train upon entering and taking his seat, and was put off said train without his shoes, as said defendant by its said agents and servants, the said conductor and brakeman well knew ; that said plaintiff was thereby compelled to remain at said Oaktown all night, and did not and could not get to Terre Haute until the next

day ; that by the violence and force used as aforesaid, in putting him off said train at Oaktown he was greatly injured and bruised, and disabled and made sick, and was greatly humiliated and put to shame in the presence of his fellow-passengers, and wounded in his feelings to the great damage of the plaintiff, and said plaintiff was compelled to pay a large sum, to-wit :   $1.00 as additional fare to Terre Haute and also $1.00 expense in paying the hotel fare at Oaktown that night, in the sum of twenty-five hundred dollars ($2,500.00) for which amount plaintiff asks judgment against the said defendant."

Second paragraph :   "The plaintiff complains of the defendant and alleges that the said defendant is a railroad corporation organized and existing under the laws of the State of Indiana, and said defendant, on the 19th day of January, 1894, was a common carrier of passengers for hire, and was then and there, as such, operating a line of railroad between Evansville, Indiana, and Terre Haute, Indiana ; that on said day the said plaintiff purchased from said defendant a ticket for the sum of three dollars and thirty cents ($3.30), which said sum of money said plaintiff paid said defendant then and there for said ticket, entitling him to passage on said road from Evansville, Indiana, to Terre Haute, Indiana, a station on said road, which said Terre Haute was then and there a regular stopping place for its said trains, and then and there at Evansville, Indiana, on the said 19th day of January, 1894, the said plaintiff with his said ticket in his possession took passage on said defendant's cars and train for said station of Terre Haute, Indiana, and the train on which plaintiff took passage was accustomed to and did go to Terre Haute, Indiana ; that in consideration of plaintiff's buying said ticket as aforesaid,

Evansville and Terre Haute Railroad Company *v.* Cates.

the said defendant then and there at the time of said purchase promised and agreed to carry plaintiff as a passenger from Evansville, Indiana, to Terre Haute, Indiana; that soon after said train of the defendant on which plaintiff took passage as aforesaid, left Evansville, Indiana, the said defendant, by its conductor of said train, took up from plaintiff his said ticket; that immediately after said train passed the station of Vincennes, Indiana, the said conductor told him, the plaintiff, that he should have got off and left the train at Vincennes, Indiana, and ordered the plaintiff to get off at the next station, and the plaintiff then informed the said conductor fully that he had purchased and paid for a ticket to Terre Haute, Indiana, as aforesaid, but the conductor denied this, and insisted on the plaintiff getting off at the next station; that said plaintiff declined and refused to so get off; that said plaintiff informed said conductor that he had no other money than what he had used for the purchase of the ticket, and that he had an important engagement to meet at Terre Haute, Indiana, that he would be enabled to consummate such engagement if he arrived at Terre Haute that night, and would lose the same if he did not; that he had a chance and would be engaged to work for a man if he got to Terre Haute that night, and would lose said engagement if he was put off; that he had no money to further pay for such ride to Terre Haute, Indiana, or to pay for his entertainment if put off, but nevertheless, at the station of Oaktown, Knox county, Indiana, the defendant, by its conductor and train-men, forcibly and unlawfully removed plaintiff from its said cars and train, and said train and cars so left plaintiff at said station, whereby plaintiff lost said engagement; that by said engagement plaintiff would have been employed to take care of a farm at $20.00 per month for the term

of ——————; that plaintiff had no other opportunity
to become so engaged; that plaintiff is a day laborer
and dependent upon his engagements to work for his
living; that plaintiff has been damaged thereby $1,000.

"Wherefore, plaintiff asks judgment for $1,000.00,
and all proper relief."

Both paragraphs are drafted upon the same theory,
and differ but slightly in their allegations.    From the
facts alleged, it is evident they proceed upon the theory
that the appellee purchased and received a ticket entit-
ling him to ride upon the appellant's train from Evans-
ville to Terre Haute, and that upon demand he delivered
that ticket to the conductor of the train, who after-
wards and before he reached Terre Haute, his destina-
tion as designated in his ticket, unlawfully expelled him
from the train.

It is not alleged that although the appellee purchased
and paid for a ticket from Evansville to Terre Haute,
the ticket agent of the appellant, by mistake or other-
wise, gave him a ticket entitling him to a shorter ride
than he paid for, but the allegation is that he purchased
a ticket "entitling him to passage" "from Evansville,
Indiana, to Terre Haute, Indiana," and that "with his
said ticket in his possession took passage on said defend-
ant's cars and train for said station of Terre Haute."

It is clear to the mind of the writer that the com-
plaint, judged as it must be by its general scope, pro-
ceeds upon the theory that the plaintiff is entitled to
recover because he was wrongfully ejected from the
train, and not for a breach of the contract of carriage.

The sufficiency of the facts alleged in the complaint
to constitute a cause of action is not presented by any
specification of error assigned in this court, hence we
decide nothing with reference to their sufficiency.

By their general verdict, the jury necessarily found

that the appellee purchased of and received from appellant's agent at Evansville a ticket entitling him to passage over its road from Evansville to Terre Haute; that "with his said ticket in his possession, (he) took passage" on one of appellant's passenger trains which run from Evansville to Terre Haute; that he gave his ticket to the conductor of the train, but that before he reached Terre Haute he was wrongfully ejected from the train.    These facts, under the allegations of the complaint, the jury by their general verdict necessarily decided, and unless the facts stated in the answers to the interrogatories are so clearly antagonistic to the facts thus impliedly found by the general verdict as that they cannot be reconciled one with the other, the general verdict must stand.

Under the issues presented by the pleadings, no question arises as to what rights, if any, appellee may have for being expelled from the train on account of any mistake of appellant's ticket agent in giving him the wrong ticket, and one entitling him to a shorter ride than he contracted and paid for; the only issue presented by the complaint being whether or not he presented to the conductor a ticket which on its face entitled him to ride on appellant's train from Evansville to Terre Haute.

I believe I may assert, without fear of contradiction, that the great weight of authority in this country is that the ticket is conclusive evidence to the conductor of the terms of the contract of carriage between the passenger and the railroad company, and that he is not bound to accept the statements of the passenger which in any manner vary or contradict the contract as evidenced by the ticket.    In fact, counsel for appellee state the rule to be as follows:    "As between the passenger

and the conductor, the face of a ticket is conclusive evidence of his rights."

The following authorities sustain this view of the rule:

*Bradshaw* v. *South Boston R. R. Co.*, 135 Mass. 407; *McKay* v. *Ohio River R. R. Co.*, 34 W. Va. 65 (9 L. R. A. 132); *Townsend* v. *N. Y. Cent., etc., R. R. Co.*, 56 N. Y. 295; *Frederick* v. *Marquette R. R. Co.*, 37 Mich. 342; *Shelton* v. *Lake Shore, etc., R. W. Co.*, 29 Ohio St. 214; *Dietrich* v. *Pennsylvania R. R. Co.*, 71 Pa. St. 432 ; *Petrie* v. *Pennsylvania R. R. Co.*, 42 N. J. Law 449; *Chicago, etc., R. R. Co.* v. *Griffin*, 68 Ill. 499; *Hall* v. *Memphis, etc., R. Co.*, 15 Fed. Rep. 57; *Weaver* v. *Rome, etc., R. R. Co.*, 3 T. and C. (N. Y.) 270; *Pennington* v. *Philadelphia, etc., R. R. Co.*, 62 Md. 95; *Johnson* v. *Philadelphia, etc., R. R. Co.*, 63 Md. 106; *Peabody* v. *O. R. & N. Co.*, 21 Ore. 121 (12 L. R. A. 823); *Van Dusan* v. *Grand Trunk R. W. Co. of Canada*, 56 N. W. Rep. 848; *N. Y., etc., R. W. Co.* v. *Bennett*, 50 Fed. Rep. 496 (1 U. S. Cir. Ct. of App. 544); *Jerome* v. *Smith*, 48 Vt. 230 ; *Downs* v. *New York, etc., R. R. Co.*, 36 Conn. 287 ; *Mosher* v. *St. Louis, etc., R. W. Co.*, 127 U. S. 390; *Boylan* v. *Hot Springs R. R. Co.*, 132 U. S. 146.

The supreme court of Massachusetts, in the case of *Bradshaw* v. *South Boston Railroad*, *supra*, says:

"It is a reasonable practice to require a passenger to pay his fare, or to show a ticket, check or pass; and, in view of the difficulties above alluded to, it would be unreasonable to hold that a passenger, without such evidence of his right to be carried, might forcibly retain his seat in a car, upon his mere statement that he is entitled to passage. If the company has agreed to furnish him with a proper ticket and has failed to do so, he is not at liberty to assert and

maintain by force his rights under that contract, but he is bound to yield, for the time being, to the reasonable practice and requirements of the company, and enforce his rights in a more appropriate way. It is easy to perceive that, in a moment of irritation or excitement, it may be unpleasant to a passenger who has once paid to submit to an additional exaction. But, unless the law holds him to do this, there arises at once a conflict of rights. His right to transportation is no greater than the right and duty of the conductor to enforce reasonable rules, and to conform to reasonable and settled customs and practices, in order to prevent the company from being defrauded; and a forcible collision might ensue. The two supposed rights are, in fact, inconsistent with each other. If the passenger has an absolute right to be carried, the conductor can have no right to require the production of a ticket or the payment of fare. It is more reasonable to hold that, for the time being, the passenger must bear the burden which results from his failure to have a proper ticket. It follows that the plaintiff was where he had no right to be, after his refusal to pay a fare, and that he might properly be ejected from the car."

In *Mosher* v. *St. Louis, etc., R. R. Co.*, decided by the U. S. Circuit Court for Eastern Dist. of Mo. (21 Am. and Eng. R. R. Cases 283), where the facts were that Mosher had purchased a round trip ticket entitling him to passage on the company's railroad from St. Louis to Hot Springs and return, the ticket providing on its face that the return coupon thereof was good for passage only when properly stamped by the company's agent at Hot Springs on the day it was to be used for such return passage; that the passenger went to the ticket office of the company, a reasonable time before the departure of the train upon which he took passage

to return to St. Louis, but on account of the absence of the company's agent he could not get his ticket stamped; that he got upon the train and tendered his ticket unstamped to the conductor, stating why he was unable to get his ticket stamped as provided on the face of the ticket; that the conductor refused to accept the ticket or to heed the statement, but demanded that he pay his fare, and, refusing, he was ejected from the train.

Brewer, J., upon these facts, states the law thus:

"The conductor, when the ticket was presented, saw no stamp upon it. The plaintiff had not been identified, and the rules of the company, binding upon him as a conductor, required him to remove the party unless he paid his fare. Now, can it be that the railroad company is responsible because the conductor did that which, by the rules of the company,—reasonable rules, too,—in pursuance of his duty, he ought to have done? Grant that there was an implied contract that the station agent should have been at Hot Springs depot. If the plaintiff had sued for a breach of that contract, and had asked the amount which he was compelled to pay in order to purchase a return ticket, then a very different question would have arisen. But here he relies on the fact that the expulsion from the train was unlawful, because the conductor ought to have taken his statement instead of that evidence which was provided by the contract, viz., identification and the stamp of the agent at Hot Springs.

"It certainly would introduce a very uncertain rule of procedure if a conductor could not rest upon the faith of the ticket which is presented to him,—if he is bound to act as a judicial tribunal, and take testimony and inquire into the excuses or reasons for the nonperfection of a ticket which is presented to him. The party

took the ticket upon the face of which was the express stipulation that before it should be good for a return passage the holder should be identified by the agent at Hot Springs, and he should stamp that ticket on the back. Now the party says: 'Why, I wanted to prove to the railroad conductor that I was the man— the party who took that ticket on the first instance.' Can the courts cast upon the conductor the duty of entering upon a judicial investigation? Of course the conductor could not at the instant secure counter-testimony, and he would be bound to take the statement of the party as to the facts of the case, independent of the express language of the ticket. I do not think * * he has a right to rely upon the language of the contract as expressed in the ticket. If the party was injured by the negligence or wrong of somebody else, he should have paid his fare back, and then sued to recover the amount which he had been compelled to pay owing to the omission, negligence, or misconduct of the agent at Hot Springs."

In *Frederick* v. *Marquette, etc., R. R. Co., supra,* the Supreme Court of Michigan, by Cooley, J., says: "How, then, is the conductor to ascertain the contract entered into between the passenger and the railroad company where a ticket is purchased and presented to him? Practically there are but two ways,—one, the evidence offered by the ticket; the other, the statement of the passenger contradicted by the ticket. Which should govern? * * * There is but one rule which can safely be tolerated with any decent regard to the rights of railroad companies and passengers generally. As between the conductor and passenger, and the right of the latter to travel, the ticket produced must be conclusive evidence; and he must produce it, when called upon, as the evidence of his right to the seat he claims.

Where a passenger has purchased a ticket and the con-
ductor does not carry him according to its terms, or, if
the company through the mistake of its agent, has
given him the wrong ticket, so that he had been com-
pelled to relinquish his seat, or pay his fare a second
time in order to retain it, he should have a remedy
against the company for a breach of the contract, but
he would have to adopt a declaration differing essen-
tially from the one resorted to in this case."

In *Bradshaw* v. *South Boston R. R. Co.*, *supra*,
the court says: "The conductor of a street rail-
way car cannot reasonably be required to take the mere
word of a passenger that he is entitled to be carried
by reason of having paid a fare to the conductor of
another car; or even to receive and decide upon the
verbal statements of others to the fact. The conductor
has other duties to perform, and it would often be
impossible for him to ascertain and decide upon the
right of a passenger, except in the usual, simple and
direct way.    *    *

"It is no great hardship upon the passenger to put
upon him the duty of seeing to it, in the first instance,
that he receives and presents to the conductor the
proper ticket or check; or, if he fail to do this, to leave
him to his remedy against the company for a breach of
contract. Otherwise, the conductor must investigate
and determine the question, as best he can, while the
car is on its passage. The circumstances would not
be favorable for a correct decision in a doubtful case.
A wrong decision in favor of the passenger would
usually leave the company without remedy for the fare.
The passenger disappears at the end of the trip; and,
even if it should be ascertained by subsequent inquiry
that he had obtained his passage fraudulently, the legal
remedy against him would be futile. A railroad com-

pany is not expected to give credit for the pay-ment of a single fare. A wrongful decision against the passenger, on the other hand, would subject the company to liability in an action at law, and per-haps for substantial damages. The practical result would be, either that the railroad company would find itself pledged in common prudence to carry every pas-senger who should claim a right to ride in its cars, and thus be subject to frequent frauds, or else, in order to avoid this wrong, to make such stringent rules as greatly to incommode the public, and deprive them of the facilities of transfer from one line to another, which they now enjoy.

"It is a reasonable practice to require a passenger to pay his fare, and to show a ticket, check or pass; * * and it would be unreasonable to hold that the passenger, without evidence of his right to be carried, might forcibly retain his seat in a car upon his mere state-ment that he is entitled to a passage. If the com-pany has agreed to furnish him with a proper ticket, and has failed to do so, he is not at liberty to as-sert and maintain by force his rights under that con-tract; but he is bound to yield, for the time being, to reasonable practice and requirements of the company, and enforce his rights in a more appropriate way. * * His right to transportation is no greater than the right and duty of the conductor to enforce reasonable rules. * * It is more reasonable to hold that, for the time being, the passenger must bear the burden which results from his failure to have the proper ticket. It follows that the plaintiff was where he had no right to be, after his refusal to pay a fare, and that he might properly be ejected from the car."

In *Hall* v. *Memphis, etc., R. Co., supra*, the court,
    VOL. 14—13

after putting, by way of illustration, a case where a passenger had paid for a ticket entitling him to ride from A to C, but by accident, or the mistake of the ticket-seller, he was furnished with a ticket from A to B, the latter an intermediate station between the stations A and C, says: "He has paid his money and there is a valid contract to carry him to his destination, but it can hardly be that he can require the conductor to stop the train till he can rectify the mistake, or take the ticket on his assurance of the real contract, or to abandon the ticket system and disregard the regulations made for the general public and the carrier's mutual convenience. What is to be done? Clearly, it seems to me, the passenger should pay his fare—if able—and settle the difference with the company by returning the ticket and adjusting the balance. Men do this in ordinary business intercourse in other branches of trade or commerce, and there is no reason why they should not in this.

"The law recognizes that these carriers find it necessary in their business to have their checks and balances in the intercommunication of their agents, and they require in its conduct elaborate systems of rules to prevent loss to them and to the public. Mistakes will occur with railroads as with others, and the same rules should be applied. It seems to me that a passenger, finding himself without a ticket or other evidence of his contract which will be recognized under these regulations, cannot plant himself on his contract right and force the railroad, outside and against the regulations, to a specific performance then and there by compelling the conductor to eject him as a foundation for more damages than he would receive if he should comply with the regulations, and sue for a breach of the contract. There is no other just way to manage these mistakes.

Those who would defraud the company might pretend to be the victims of mistakes or the beneficiaries of contracts outside the regulations.    We took much time, examined many witnesses, and heard much argument on the issue whether the station agent did or did not make the alleged contract to carry the plaintiff on tickets expired on their face, and I doubt if, in the conflict of proof, the jury could have reached a satisfactory verdict on that issue.    How, then, could the conductor have tried it successfully in the brief time allowed him in collecting tickets?    It was impossible.    He had either to take plaintiff's word for it or enforce his regulations.    The plaintiff's word was, and has been all along, disputed; and, giving him the benefit of all the credence his character and life entitles him to, the fact remains that the conductor had no means of knowing the weight to be attached to his word, and a common impostor could have told the story as well as the best of men."

And in *Pouilin* v. *Canadian Pacific R. W. Co.*, 52 Fed. Rep. 197, Taft, J. says: "The law settled by the great weight of authority, and but recently declared in a case in this court (*New York, etc., R. R. Co.* v. *Bennett*, 50 Fed. Rep. 496; 1 C. C. A. 544), is, that the face of the ticket is conclusive evidence to the conductor of the term of the contract of carriage between the passenger and the company.    The reason for this is found in the impossibility of operating railways on any other principle, with a due regard to the convenience and safety of the rest of the traveling public, or the proper security of the company in collecting its fares.    The conductor cannot decide from the statements of the passenger what his verbal contract with the ticket agent was, in the absence of the counter evidence of the agent.    To do so would take

more time than a conductor can spare in the proper and safe discharge of his manifold and important duties, and it would render the company constantly subject to fraud, and subsequent loss. The passenger must submit to the inconvenience of either paying his fare or ejection, and rely upon his remedy in damages against the company for the negligent mistake of the ticket agent. There is some conflict among the authorities, but the great weight of them is in favor of the result here stated."

If then the ticket which the appellee gave to the appellant's conductor is conclusive as to the appellee's right upon the train, and the jury by their general verdict having found that he gave the conductor a ticket which on its face entitled him to ride from Evansville to Terre Haute, we must look to the interrogatories to see what material fact is found in their answers, if any, which cannot be reconciled with the general verdict.

The interrogatories propounded with the answers of the jury thereto are as follows:

1.  Quest.  Was the plaintiff a passenger on defendant's train that was scheduled to leave Evansville, Indiana, at 6:30 o'clock P. M., on January 19, 1894?

Ans.  Yes.

2.  Quest.  Was not John Laugel conductor, and John Baldwin brakeman on said train on which plaintiff was riding?

Ans.  Yes.

3.  Quest.  Did plaintiff ride on said train from Evansville to Oaktown on said date?

Ans.  Yes.

4.  Quest.  Did not said Laugel, as such conductor, collect the tickets and fares from the passengers, including the plaintiff, on said train on said date?

Ans.  Yes.

5. Quest. Was the plaintiff requested by the conductor to leave said train at Oaktown, and did he refuse to get off?

Ans. Yes.

6. Quest. Did the conductor and brakeman put the plaintiff off said train at Oaktown?

Ans. Yes.

7. Quest. Was the plaintiff hurt or injured by the conductor or brakeman in putting him off?

Ans. No.

8. Quest. Was any more force used than necessary in putting the plaintiff off said train?

Ans. No.

9. Quest. Did the plaintiff have a ticket when he got on the train at Evansville?

Ans. Yes.

10. Quest. Did not the plaintiff pay the defendant's agent at Evansville $3.30, and call for a ticket from Evansville to Terre Haute?

Ans. Yes.

11. Quest. Did not said agent give said plaintiff a ticket for passage on said train?

Ans. Yes.

12. Quest. Did the plaintiff give the conductor a ticket, after leaving Evansville and before reaching Vincennes?

Ans. Yes.

13. Quest. Is not the ticket introduced in evidence, the same ticket so handed by the plaintiff to said conductor Laugel?

Ans. Yes.

14. Quest. Did not said conductor, after receiving said ticket, place the same in a pocket different from the one in which he put all the other tickets taken up

on said train, except the ticket taken from Mr. Werley?·

Ans.   Yes.

15.   Quest.   Did not the conductor put plaintiff's ticket and Werley's ticket in the same pocket?

Ans.   Yes.

16.   Quest.   Did the plaintiff ever read or examine his said ticket?

Ans.   No.

17.   Quest.   Was not said ticket a ticket from Evansville to Vincennes, and numbered 9,265?

Ans.   Yes.

18.   Quest.   Did the plaintiff purchase said ticket at the defendant's office in Evansville?

Ans.   Yes.

19.   Quest.   Did the plaintiff, at the time he purchased said ticket, ask for a ticket to Terre Haute?

Ans.   Yes.

20.   Quest.   Did the plaintiff have his shoes on or was he barefooted when put off the train?

Ans.   Yes.

21.   Quest.   Did the plaintiff offer or give to the said conductor any other ticket than the one introduced in evidence?

Ans.   No.

22.   Quest.   Did the plaintiff refuse to pay fare between Vincennes and Terre Haute, or any fare after leaving Vincennes?

Ans.   Yes.

23.   Quest.   Was not the ticket which the plaintiff gave to the conductor on said train, in the words and figures following, to-wit:

"Evansville and Terre Haute Railroad, No. 9,265, Evansville (U. D.) to Vincennes, good until one day after date of sale, and for continuous passage on trains

stopping at points named when stamped by selling
agent.                          A. G. PALMER,
                                "Gen'l Pass'r Agent."?

Ans. Yes.

24. Quest. Was not said ticket stamped on the
reverse thereof by the defendant's stamp, at Evansville,
Indiana, where the ticket was sold, date January 19,
1894?

Ans. Yes.

The jury, in answer to the twenty-first and twenty-
third interrogatories, find that the only ticket which
the appellee gave to the conductor, on its face entitled
him to ride only from Evansville to Vincennes, and in
answer to interrogatory twenty-two that he refused to
pay any fare from Vincennes to Terre Haute.

From these facts specially found by the jury in
answer to the interrogatories, it is evident that appellee
was wrongfully on appellant's train after it left Vin-
cennes, the point to which his ticket entitled him to be
carried and his refusal to pay his fare from Vincennes
to Terre Haute, justified the conductor in putting him
off the train. To hold otherwise under the issues of
this case, is to say that the ticket is not the evidence of
the passenger's right to be carried, but that the right to
be upon the train and to transportation depends upon
the statement of the passenger, and that such statements
are conclusive and must be heeded by the conductor.
In other words, if the passenger has an absolute right
to be carried, the conductor cannot require the produc-
tion of a ticket or the payment of fare.

In the majority opinion a number of decisions of this
court and of the Supreme Court of this State are cited in
support of said opinion, but I think they are each and
all distinguishable from the case in hand.

In *Pittsburgh, etc., R. W. Co.* v. *Hennigh, supra,*

the question was whether or not the conductor had a right to expel the passenger although he had purchased and given to the conductor a ticket which upon its face entitled him to ride from Chicago to New Castle, and the court held that his expulsion was wrongful.

In *Toledo, etc., R. W. Co.* v. *McDonough, supra,* the facts were that McDonough purchased a ticket entitling him to ride from Toledo, Ohio, to Ft. Wayne, Indiana; he entered a passenger car attached to a freight train and to the conductor of the train delivered up his ticket and in return from the conductor received a conductor's check which designated his destination. This train, before reaching Ft. Wayne, was overtaken by a passenger train when the conductor advised McDonough to leave his train and get upon the other in order that he might reach his destination sooner, assuring him that the conductor's check which he had given him would be honored by the conductor of the passenger train; acting upon the advice and assurance of the conductor of the freight train, McDonough left the freight train and got upon the passenger train, tendering for passage to the conductor of that train the conductor's check received by him from the conductor of the freight train; the conductor of that train refused to accept the check and ejected him from the train, and a judgment rendered in his favor by the court below was affirmed.

In the case of the *Lake Erie, etc., R. W. Co.* v. *Fix, supra,* the facts were substantially as follows: Fix purchased a coupon ticket from the railroad company's agent at Ambia, entitling him to ride from Ambia to Boswell and return; on the train going from Ambia to Boswell the man acting as conductor took his ticket returning to him the wrong coupon, that which entitled him to ride from Ambia to Boswell, instead of the one

from Boswell to Ambia; Fix did not notice the mistake of the conductor, but in the night time of the same day he got upon another of the company's trains going to Boswell to return home and handed the conductor of that train the coupon or part of the ticket which he had received back from the conductor of the other train, the ticket was refused and notwithstanding the explanations of Fix he was ejected from the train, and the court held he was entitled to recover.

The facts in the case of the *Pennsylvania Co.* v. *Bray, supra,* are identical with those in *Lake Erie, etc., R. W. Co.* v. *Fix, supra,* but the court in deciding the case was divided as to whether or not the rule announced in the Fix case was right.

In the case of *Cleveland, etc., R. W. Co.* v. *Beckett, supra,* the facts were that Beckett went to the railroad company's passenger station, a reasonable length of time before the arrival of the train upon which he desired to take passage, and applied for and tendered the money for a ticket from Indianapolis to Jonesboro and return, but on account of the disabilities of the company's agent he was unable to get the ticket; he entered the car and upon the demand of the conductor for his ticket offered to pay the round trip rate, the same that he would have been compelled to pay had he got a ticket, demanding that he be given by the conductor something as evidencing the fact that he had paid for a round trip. He was informed by the conductor that he, the conductor, was not empowered to accept payment in cash for roundtrips or to issue tickets entitling passengers to ride on other trains; on his refusal to pay the regular fare he was expelled, and having recovered judgment in the court below, the judgment was affirmed in this court by a divided court.

Whether the decision in the last named case is right

or wrong need not be considered at this time for it has no analogy to the case in hand, but it may be remarked that the decision in that case goes to the extreme limit and should not be enlarged upon.

Of the other cases relied upon by the majority it will be seen that they are readily distinguishable from the one under consideration in this, that in each of those cases the passenger purchased, received and tendered to the railroad company's conductor a ticket which on its face entitled the party to ride to his destination. True in several of them the conductor had made a mistake in giving back part of the ticket, but a ticket entitling the passenger to passage in each case had been delivered up to the conductor by the passenger. In this case no ticket was ever received by the appellee or given to the conductor entitling him to ride from Vincennes to Terre Haute. Appellee was therefore wrongfully on the train.

The general verdict rests upon a wrongful expulsion as alleged in the complaint, while the answers to the interrogatories show that the appellee was wrongfully on the train, hence rightfully ejected therefrom.

For these reasons I think the judgment should be reversed, with instructions to render judgment in favor of appellant on the answers to the interrogatories.

Filed October 16, 1895.