[Filed June 24, 1891.]

## WILLIAM PEABODY *v.* O. R. & N. CO.

CARRIER — DUTY OF PASSENGER — TICKET.— It is the duty of a passenger, if he has not the required ticket or token evidencing his right to travel on that train, to pay his fare or quietly leave the train when requested, and resort to his appropriate remedy for the damages he has sustained; and if he attempt to retain his seat without paying his fare, and is expelled by the conductor, using no more force than is necessary, he can recover no damages for the injury incurred by such expulsion.

PLEADING — ADMISSION — PRESUMPTION — BURDEN OF PROOF.— When it is admitted that a railroad company is the owner of a railroad then being operated, a presumption arises that the same is operated by the company owning it, and the burden of proof is upon such company to show to the satisfaction of the jury that such is not the fact.

Wasco county: J. H. BIRD, Judge.

Defendant appeals. Reversed.

*W. W. Cotton, Snow & Gilbert,* for Appellant.

*A. S. Bennett,* for Respondent.

Lord, J.—This is an action in tort to recover damages for the wrongful acts of the defendant's agents and servants in ejecting the plaintiff from one of its cars.

There are mainly two questions presented by this record, but the controlling one arose substantially out of this state of facts: The plaintiff, who is a stock-dealer, had shipped stock from Grant's station to Portland, and had received from the railroad company a shipping contract which entitled him upon the performance of certain conditions to a passage from Grant's to Portland and return. Going to the office of the company earlier than its business hours, he was unable to get the ticket stamped and otherwise perform its conditions so as to ride upon it, without taking a later train, so he went on the train then ready and seated himself in the car. When the conductor came around for tickets he presented to him his shipping contract, but it not being stamped, etc., as required, the conductor refused to receive it, and informed him that he must pay his fare, which plaintiff did, giving the conductor a twenty-dollar gold piece, from which the amount of his fare from Portland to Grant's was to be taken. At this time, according to his testimony, he asked the conductor if he would be allowed to stop over at The Dalles and go to Grant's on the next train, to which the conductor replied that he could do so and that it would be all right. The conductor not being able to make the necessary change for the fare, after an absence of about twenty minutes, during which time he was engaged in taking up tickets, etc., returned with the change and a drawback check which he delivered to the plaintiff. Upon the back of the drawback check was a receipt for the fare, but the check itself had printed upon it in large and legible words: "Good for this day and train only."

The plaintiff does not seem to have given any attention to the check or what was written or printed upon it, but

acting upon the assurance of the conductor that he would be permitted to stop over at The Dalles he did so, and after remaining some hours he took another train for the completion of his journey to Grant's. A short time after he entered upon this train the conductor called upon him for his ticket, and he presented the drawback check and its receipt, which the conductor refused to accept, stating that it did not entitle him to ride upon that train, when he then explained to him the circumstances under which it was delivered to him by the other conductor, and claimed the right to continue his ride to Grant's station. The conductor told him that he was required by the rules and regulations of the company to collect fare or a ticket entitling the passenger to ride, that none of the papers which he had presented entitled him to ride on that train, and that unless he paid his fare his duty would require him to expel him from the cars. After waiting until the train had proceeded several miles and arrived at a station, the conductor informed him that unless he paid his fare he would be under the necessity of requiring him to leave the train. The plaintiff pointedly refused to leave or to pay his fare, when the conductor finding that he would do neither one or the other, with the aid of the brakeman, undertook to expel him from the car, which the plaintiff resisted with all his force and manifested a disposition to fight, but when finally expelled from the train he tendered his fare, was received again on the train and carried to his destination. His own evidence concedes that the duty of expelling him was an unpleasant task to the conductor, and performed under the circumstances indicated.

From this statement of the facts, it is apparent that the plaintiff was without any proper evidence or token of his right to transportation on that train, other than his statements to the second conductor of the oral representations of the other conductor of such permission. Although a disputed fact at the trial, the conductor denying that he

ever made such representations, or gave such permission, we shall assume its verity after verdict.

Under such circumstances, was it the duty of the plaintiff, when notified by the conductor that he could not receive the drawback check, to pay his fare under protest, or leave the train, without rendering it necessary for the conductor to resort to force to secure his removal? The drift the defendant's contention is, that it is a recognized right of every railroad company to make such reasonable rules and regulations for the conduct of its business as may be necessary, and that it is a reasonable exercise of this right to require that every passenger shall, when called upon by the conductor, present a ticket conforming to its reasonable rules and regulations, or if he is unable so to do, that he shall pay his fare; but if he cannot produce the required ticket, and refuses to pay his fare, that he may be lawfully ejected from the train.

In this view, as between the plaintiff and the conductor of the train from which he was expelled, unless he could produce the required ticket as evidence of his right to ride on that train, or in default thereof to pay his fare, the conductor would not be authorized to allow him to proceed to his destination on such train on his statements of the oral representations of the other conductor inconsistent with the face of his ticket and contrary to the rules and regulations of the company. To that conductor the ticket which the plaintiff produced was to be taken as conclusive evidence of his right to travel on that train, and it failing, the conductor could not receive the statements of the plaintiff contradicting its plain terms, and allow him to retain his seat. Upon this assumption, when the plaintiff was unable to produce the required ticket evidencing his right to travel on that train, and refused to pay his fare, or to leave the train, stopped at a proper place, when requested, the conductor was authorized lawfully to expel him from the train, and the defendant is not responsible in damages for injuries incurred in resistance to such expulsion.

Summed up, then, the considerations in support of the principle invoked are, that as between the conductor and passenger, the right of the latter to ride must be evidenced by some proper token or ticket; that neither the time nor the occasion is suitable for an investigation, whether of explanation or representations of another conductor in conflict with the terms of the ticket, and contrary to the rules of the company; that it is better under such circumstances that the passenger comply, if he is unable to produce the required ticket and pay his fare, or leave the train quietly and suffer the temporary inconvenience which results, than that the business of the road be interrupted to the annoyance of the travelling public; that such a course would avoid all liability to unseemly struggles often occurring in the presence of women and children, and prevent breaches of the peace and at the same time secure the passenger ample redress in the remedies which the law provides. The application of this principle includes a variety of cases, as where the passenger is unable to produce any token or ticket as evidence of his right to ride, or the ticket which he does produce is irregular or defective due to the fault or negligence of the agents of the company.

In *Frederick* v. *R. R. Co.* 37 Mich. 342; 26 Am. Rep. 531, the plaintiff held an insufficient ticket, caused by the fault of the company's agent in delivering to him a ticket to the wrong station. He asked and paid for a ticket to a given station, and received what he supposed was such ticket, but which on its face was only good to a point short of his destination. In passing upon this question, the court observed: "How then is the conductor to ascertain the contract entered into between the passenger and the railroad company where a ticket is purchased and presented to him? Practically there are but two ways—one, the evidence offered him by the ticket; the other, the statements of the passenger contradicted by his ticket. Which should govern? In judicial investigations, we appreciate the necessity of an obligation of some kind, and the benefit of a cross-exam-

ination.   At common law, parties interested were not com-
petent witnesses, and even under our statutes the witness is
not permitted in certain cases to testify as to facts which, if
true, were equally within the knowledge of the opposite
party, and cannot be procured.   Yet here would be an
investigation as to the terms of the contract where no such
safeguards could be thrown around it, and where the con-
ductor at his peril would have to accept the statement of
the interested party.   I doubt the practical workings of
such a method, except for the purpose of encouraging and
developing fraud and falsehood, and I doubt if any system
could be devised that would so much tend to the disturb-
ance and annoyance of the traveling public generally.   As
between conductor and passenger, and the right of the latter
to travel, the ticket produced must be conclusive evidence,
and he must produce it when called upon as evidence of
his right to the seat he claims.   Where a passenger has
purchased a ticket, and the conductor does not carry him
according to its terms, or if the company, through the mis-
take of its agent, has given him a wrong ticket, so that he
has been compelled to relinquish his seat, or pay his fare a
second time in order to retain it, he would have a remedy
against the company for a breach of the contract, but he
would have to adopt a declaration differing essentially from
the one resorted to in this case."

In *Townsend* v. *R. R. Co.* 56 N. Y. 300, the court says:
"The question in this case is, whether a wrongful taking of
a ticket of a passenger by the conductor of one train
exonerates him from compliance with the regulations on
another on which he wishes to proceed upon his journey.
I am unable to see how the wrongful act of the previous
conductor can at all justify the passenger in violating the
lawful regulations upon another train.   *   *   *   The con-
ductor of the train upon which he was, was not bound to
take his word that he had had a ticket showing his right
to a passage to Rhinebeck, which had been taken up by
the conductor on the other train.   His statement to that

effect was wholly immaterial, and it was the duty of the conductor to the company to enforce the regulation, as was repeatedly held by the trial judge, by putting the plaintiff off in case he persistently refused to pay fare. The question is, whether under the facts found by the jury, his resistance in the performance of this duty was lawful on the part of the plaintiff. If so, the singular case is presented where the regulation of the company was lawful, where the conductor owed a duty to the company to execute it, and at the same time the plaintiff had a right to repel force by force and to use all that was necessary to retain his seat in the car. Thus a desperate struggle might ensue, attended by very serious consequences, when both sides were entirely in the right, so far as either could ascertain. All this is claimed to result from the wrongful act of the conductor of another train in taking a ticket from the plaintiff, for which wrong the plaintiff had a perfect remedy, without inviting the commission of an assault and battery by persisting in retaining a seat upon another train in violation of the lawful regulations by which those in charge were bound to govern themselves."

In *Yorton* v. *R. R. Co.* 54 Wis. 238; 41 Am. Rep. 23, the plaintiff had purchased a ticket to the place of his destination, and asked the conductor for a stop-over ticket, and through the fault or mistake of the conductor, he received a trip or train check instead of a stop-over ticket, for which he asked, and which the conductor undertook to give him. The conductor of the second train refused to recognize it for fare, and demanded passage money or a ticket, which being refused, the plaintiff was ejected from the train. The court says: "Then the question arises, was the plaintiff entitled to ride on a subsequent train, not having the proper stop-over check; or was the second conductor justified, under the circumstances, in putting him off the train when he refused to pay his fare? * * * He was perfectly justified in ejecting plaintiff from his train when plaintiff had no proper voucher, produced no sufficient evidence of his right

to ride thereon, and refused to pay fare, and he himself was ignorant of the transaction between plaintiff and Conductor Sherman (the first conductor). It seems to us there was no other course for him to pursue under the rules of the company, for he was certainly not bound to take the plaintiff's word that he had paid his fare, and that Sherman had made a mistake in not giving him a stop-over check. It is apparent that the right of plaintiff to ride on the train without a proper voucher, and the right of the second conductor to eject him for want of said voucher, were inconsistent rights. Each could not coëxist at the same time. Mistake or fault of the conductor in not giving him on request such a check would not give him a lawful right to ride on the second train, though he might require damages against the company for the wrongful act of the first conductor."

In *Bradshaw* v. *Ry. Co.* 135 Mass. 407; 46 Am. Rep. 481, the court says: "It is no hardship upon the passenger to put upon him the duty of seeing to it in the first instance that he receives and presents to the conductor a proper ticket or check, or if he fail to do this, to leave him to his remedy against the company for a breach of its contract. Otherwise the conductor must investigate and determine the question as best he can while the car is on its passage. The circumstances would not be favorable for a correct decision in a doubtful case." (*Mosher* v. *R. R. Co.* 23 Fed. Rep. 326; *Hall* v. *R. R. Co.* 15 Fed. Rep. 57; *Petrie* v. *R. R. Co.* 42 N. J. L. 449; *Atchison etc. R. R. Co.* v. *Gants*, 38 Kan. 608; 5 Am. St. Rep. 780; *Chicago etc. R. R. Co.* v. *Griffin*, 68 Ill. 499; *Shelton* v. *Ry. Co.* 29 Ohio St. 214; *R. R. Co.* v. *Flemming*, 14 La. 128; *Pennsylvania R. R. Co.* v. *Connell*, 112 Ill. 295; 54 Am. Rep. 238; *Prince* v. *Ry. Co.* 64 Tex. 144; *Hufford* v. *R. R. Co.* 53 Mich. 118; *Downs* v. *R. R. Co.* 36 Conn. 287; 4 Am. Rep. 77; *Jerome* v. *Smith*, 48 Vt. 230; 21 Am. Rep. 125.)

On the other hand, the contention for the plaintiff is, that when he paid his fare from Portland to Grant's upon the representation and promise of the conductor that he could stop over at The Dalles and ride upon the next train and the conductor delivered to him a draw-back check with

a receipt for the money indorsed on the back thereof, and that in pursuance of such agreement and promise, having stopped over, and then gone upon the second train without notice of any contrary regulation until after he commenced his journey, he was not compelled to pay fare, or leave the train, but that he was lawfully there, and might stand upon his rights, and if wrongfully ejected by the conductor, he could recover damages for any injuries which he suffered in consequence of such ejection.

Upon the facts, there is no doubt that the plaintiff had no knowledge of the rules or regulations of the company; and as the agreement for a ticket with the right to stop over was made before the ticket was delivered, the plaintiff cannot be deemed to have assented to any part of the contract expressed by the ticket different from that made with the conductor. As he wished to make his journey over the road on different trains to accommodate his business engagements, the conductor must be supposed to have known what the rules and regulations required in respect to the matter upon which he desired information. He was the person appointed by the company to impart the information asked, and to sell and deliver to him a ticket as evidence of his right to ride. This agent assures him that he can pay his fare to Grant's station, and that he can stop over at the place designated; and the plaintiff, relying upon his representations, paid his fare. His ticket is not delivered to him immediately for want of change, and not until some twenty minutes after his contract or understanding of permission to stop over was made, showing that he parted with his money in reliance upon the contract made or permission given, and not upon a ticket which he had not seen, expressing different terms or terms inconsistent with his right to pursue his journey upon the next train. When the ticket was delivered to him, supposing that it is sufficient, or that the conductor whose duty it was to furnish it would deliver one conforming to their engagement, and relying upon his contract as made, he puts the ticket into his pocket, without

XXI OR.—9.

observing its terms, or that it expressly limits his right to ride on that day and train only, and stops over at The Dalles; and when he commences his journey on the next train, and his ticket is demanded of him, he is informed by the conductor that it is insufficient, when he explains to him the contract he made with the other conductor, and that he is on that train in pursuance of his assurances and contract; but the second conductor refuses to receive his explanations, and demands of him the payment of his fare, or the alternative of leaving the train, both of which he refuses to do, claiming that he is lawfully upon the train, and resisting with force his expulsion from it. Under such circumstances, the plaintiff contends that the contract established the relation of passenger and carrier, and if the ticket furnished by its agent was insufficient to notify the second conductor of his right to travel on that train, it was the negligence of the other conductor, and that he being without fault, had a lawful right to travel on that train, and might resist his ejection, and if ejected he could recover damages for any injury which he suffered by reason of such ejection.

In support of this contention, numerous authorities are cited, to which it is not possible to make full reference. Perhaps as strong a case as any is *Head* v. *R. R. Co.* 79 Ga. 358; 11 Am. St. Rep. 434, which, like the case at bar, was an action in tort for the expulsion of the plaintiff from the cars of the defendant. By some negligence of the company's agent, the plaintiff's ticket was not stamped or signed as required by the conditions of the ticket and the regulations of the company. He presented the ticket for his fare, but it was refused by the conductor, and for his expulsion the court held that he could recover "his proper damages of all sorts," and among other things, saying: "The company could no more be heard to say that an error was committed by its agent, resulting in a breach of duty on its part to the plaintiff, than it can be heard to say that an error was committed by its own action. * * * He (the plaintiff) had a right to assume that all these agents understood their duties, and

would perform them; and if he performed his he could stand upon his contract, and upon his relation as a passenger, which the contract generated."

In *Philadelphia etc. R. R. Co.* v. *Rice,* 64 Md. 63, the plaintiff had gone upon one of the trains of the company with a proper ticket, and the conductor cancelled it by mistake, but afterwards attempted to correct it, and assured the plaintiff that it would be all right and that he could ride upon it on the next train in that condition. It was not properly corrected, and when the plaintiff went upon the returning train and presented the ticket, the conductor refused to take it, and the plaintiff refusing to pay his fare or leave the train was expelled therefrom. The court says: "The return coupon was cancelled through the mistake of the conductor. This error he attempted to correct, and informed plaintiff that it was all right. The latter had a right to rely on this assurance, and that the ticket for which he had paid his money entitled him to return to Wilmington. If the servants of the appellant under such circumstances laid their hands forcibly upon the plaintiff and compelled him to leave the car, there was not merely a breach of contract on the part of the company but an unlawful interference with the person of the plaintiff, and an indignity to his feelings, for which an action will lie, and for which he is entitled to be compensated in damages. Such is the well-settled law of this state and of this country. The mistake by which plaintiff's ticket was cancelled was the mistake of the appellant's servants, and it must abide the consequences."

In *Hufford* v. *R. R. Co.* 64 Mich. 631; 8 Am. St. Rep. 859, the plaintiff purchased in good faith of the ticket agent a genuine ticket, issued by the company, which the agent had a right to sell, covering the distance between two stations, and was informed by the agent that it "was good and entitled him to ride between said stations." The court says: "When the plaintiff told the conductor on the train that he had paid his fare, and stated the amount he paid to the agent who gave him the ticket he presented, and told him it was

good, it was the duty of the conductor to accept the statement of the plaintiff until he found out that it was not true, no matter what the ticket contained in words, figures or other marks." (*Toledo etc. Ry. Co.* v. *McDonough,* 53 Ind. 289; *Burnham* v. *R. R. Co.* 63 Me. 298; 18 Am. Rep. 220; *Hamilton* v. *R. R. Co.* 53 N. Y. 25; *Palmer* v. *R. R. Co.* 3 S. C. 580; 16 Am. Rep. 750; *Lake Erie etc. Ry. Co.* v. *Fix,* 88 Ind. 381; 45 Am. Rep. 464; *English* v. *R. R. Co.* 66 N. Y. 454; 23 Am. Rep. 69; *Tarbell* v. *R. R. Co.* 24 Hun, 51.)

In the case at bar the plaintiff never had any valid ticket or evidence of his right to ride or travel on the train from which he was expelled. His ticket was not even apparently valid on its face when offered, and is not within the principle or reason of some of the cases cited in support of his contention. That he had paid his fare to his destination, and that the conductor represented that he might stop over at The Dalles may be admitted, but the ticket he received furnished no evidence of that permission, was inconsistent with it, and when offered was after the right to travel upon it had expired according to its terms. It is not the case of a passenger with a valid ticket entitling him to a ride on the train from which he was ejected, or with such a ticket as he was required to have, and by some mistake or fault of the conductor wrongly cancelled, as in *Philadelphia R. R. Co.* v. *Rice,* 64 Md. 63; or surrendered to the proper agent of the company on demand, and receiving back what the agent believed to be the proper evidence of a right to ride on it, and when presented to the other conductor refused, despite the explanation offered, as in *Lake Erie etc. Ry. Co.* v. *Fix,* 88 Ind. 381; 45 Am. Rep. 464, or as in *Toledo etc. Ry. Co.* v. *McDonough,* 53 Ind. 289; or where the ticket appears upon its face to be good, although not a regular ticket, but which the ticket agent assures the passenger is sufficient, after his attention has been recalled to it, and is afterwards refused by the conductor on the train as in *Hufford* v. *R. R. Co.* 53 Mich. 118; 64 Mich. 631; 80 Am. St. Rep. 859; or where the plaintiff has paid his fare and the same conductor to whom he paid it asks for it again, and insists unless it is paid that he would put the plaintiff off, and the latter refusing

to pay is forcibly ejected from the train, as in *English* v. *R. R. Co.* 66 N. Y. 454; 23 Am. Rep. 69, or where the plaintiff was not guilty of any negligence in accepting his ticket, but carefully examined it, saw everything there was on it, and received explanations of the meaning of the punched holes, and assurances that the ticket in the condition in which it was would be good for the trip, and the conductor refused to receive it, as in *Murdock* v. *R. R. Co.* 137 Mass. 293; 50 Am. Rep. 307, and in some other cases cited which might be distinguished.

It is true that the principle announced in some of the authorities cited are in conflict with the contention for the defendant, and while I own some reluctance, it seems to us that the weight of authority and reason, as applicable to the facts disclosed by this record, is that it is the duty of the passenger to pay his fare or quietly leave the train when requested, if he has not the proper ticket, and resort to his appropriate remedy for the damages he has sustained; but that if he attempt to retain his seat without paying his fare, and is expelled by the conductor, he can recover no damages for the injuries incurred by the expulsion. This result will tend to avoid unseemly struggles occurring on railroad trains, usually filled with passengers, including women and children, and thereby prevent breaches of the peace, and at the same time will fully protect the passenger by making the company responsible for all damages resulting from any breach of its contract. It is not disputed that the business of ejecting the plaintiff was extremely disagreeable to the conductor, and that he made considerable effort to induce the plaintiff to pay his fare or peaceably to leave the train, but that the plaintiff not only insisted on being put off by force but resisted with all the force he could command.

It is hardly necessary to say that no reference is intended to apply to agents of the company who act wantonly, or willfully, or maliciously, or that a trespasser upon a train can be treated in a willful, wanton, or malicious manner.

The motion for non-suit was based principally upon the

idea that the evidence for the defendant was the only
evidence in the case, and that this so conclusively showed
that the defendant had leased its road and ceased to operate
it at the time of the injury that the court erred in submit-
ting the case to the jury. The stipulation and pleadings
admit' that the defendant was the owner of the road.
When it is admitted that a railroad company is the owner
of a railroad, then being operated, a presumption arises
that the same is operated by the company owning it, and
the burden of proof is upon such company to show to the
satisfaction of the jury that such is not the fact. Thus in
*Ferguson* v. *R. R. Co.* 63 Wis. 145, the court says: "When a
railroad company owns a railroad in operation bearing the
name of the company, the presumption is that such com-
pany operates it; and in order to relieve itself from liabilities
for injuries to persons upon such road, caused by the negli-
gence of the employés operating the same, the burden of
proof is upon it to show that it does not operate the same."
Nor is it disputed that at common law the general rule was,
where unimpeached witnesses testify distinctly and posi-
tively to a fact and are uncontradicted, their testimony was
to be credited and to have the effect of overcoming a mere
presumption. "But this rule," as RAPALLO, J., observed,
"is subject to many qualifications." (*Elwood* v. *Western Union
Tel. Co.* 45 N. Y. 553; 6 Am. Rep. 140.) Our code provides
that the jury "is not bound to find in conformity with the
declarations of any number of witnesses which do not produce
conviction in their minds, against a less number, or against a
presumption or other evidence satisfying their minds." (Hill's
Code, § 845, Sub. 2.)

This seems to indicate, as was contended, that where a
presumption arises in any case, the jury is not bound to
believe the declarations of a witness, or a number of them,
contradicting the presumption, but that the credibility of
such witness or witnesses then becomes a question for them,
and if they are not satisfied of the truthfulness of the evi-
dence of such witnesses, they are not bound to believe it,

but may find in accordance with the presumption. The execution of the lease is admitted, but the transfer and possession under it are disputed, and the establishment of that fact is dependent upon the testimony of Mr. Cookingham, and certain telegrams and circulars, offered through him, for that purpose. The lease itself purports to have been executed in April, 1887, and before the statute for its authorization had gone into effect; but waiving this, the proof of the transfer and possession, which ought to have been clear and decisive, was vague and unsatisfactory. From the nature of the circumstances, and as Mr. Cookingham stood related to them, it was not possible for him to testify positively or distinctly as to this transaction. Nor do the telegram and circular relied upon to establish the transfer and possession, aided by the testimony of Mr. Cookingham, render the proof in that regard much more definite and satisfactory. Owing to their vagueness as applied to the subject matter in dispute, without his testimony they are of little value as evidence. Much that he testifies to is but hearsay, much mere conclusions; and as to what may be regarded as relevant, it was for the jury to pass upon the weight to be given to his statements in respect thereto, and his credibility.

Taking then into consideration the presumption of operation of the road from its ownership, and in addition thereto that the stock contract upon which plaintiff shipped his cattle and rode to Portland was drawn in the name of the defendant company, and signed by the agent as the agent of the defendant for that company; that the lettering upon its cars and tickets, draw-back checks and other writings, etc., were likewise in the name of the defendant company, together with the testimony of the plaintiff, keeping in mind that the jury is the judge of the credibility of the witnesses, it would be difficult on this record to assign any just or legal reason to withdraw the case from the jury.

Leaving out of view the question of credibility, before a withdrawal of a case from a jury can be justified, the facts

Points decided.

of the case should not only be undisputed, but the conclusion to be drawn from them indisputable. But whether the facts be disputed or undisputed, if different minds may honestly draw different conclusions from them, the case should be properly left to the jury. (*Railroad Co.* v. *Sternberg*, 17 Mich. 99; *Railroad Co.* v. *Stout*, 17 Wall. 657.)

Upon this point we think there was no error in refusing the motion for non-suit; but in view of the considerations already expressed, the judgment is reversed, and the plaintiff remitted to his remedy in accordance therewith.