**KIRBY LUMBER CO. v. CONSOLIDATED UNDERWRITERS et al. (No. 1361.) ***

(Court of Civil Appeals of Texas. Beaumont. Nov. 29, 1926. Rehearing Denied Dec. 15, 1926.)

1. **Appeal and error** ⟠1097(5)—**Supreme Court, having approved holding that statute was not unconstitutional, Court of Civil Appeals is bound thereby (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—47).**

Where Supreme Court approved holding of Commission of Appeals as to constitutionality of Vernon's Ann. Civ. St. Supp. 1918, art. 5246 —47, the Court of Civil Appeals is bound thereby.

2. **New trial** ⟠52—**Basing verdict on majority vote and prior agreement of jury to be bound thereby, held "misconduct" (Rev. St. 1925, art. 2203).**

Basing verdict on majority vote of jury and prior agreement to be bound thereby *held* "misconduct," within Rev. St. 1925, art. 2203, entitling defendant to new trial.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Misconduct.]

3. **Railroads** ⟠260—**Lumber company, operating train under agreement with railroad, held liable for tort of servant causing injury to third person.**

Where, under agreement with railroad, train and engine of lumber company were manned by company's employés, except the conductor, it was liable for negligence of its employés causing death to employé of third person during operation in which railroad had no interest.

O'Quinn, J., dissenting.

Appeal from District Court, Jasper County; V. H. Stark, Judge.

Action by the Consolidated Underwriters and others against the Kirby Lumber Com-

pany, wherein beneficiaries of deceased employé intervened as parties plaintiff. From a judgment for plaintiffs, defendant appeals. Reversed and remanded.

Andrews, Streetman, Logue & Mobley, of Houston, for appellant.

C. A. Lord, of Beaumont, for appellees.

O'QUINN, J. This suit was brought by Consolidated Underwriters, the insurer of T. B. Allen & Co., under the Workmen's Compensation Law, against appellant, Kirby Lumber Company, to recover damages on account of the death of Joe Singletary, caused by the alleged negligence of appellant, Kirby Lumber Company. The suit was brought by Consolidated Underwriters both in its own behalf and in behalf of and for the benefit of all the statutory beneficiaries of the deceased as in accordance with what are known as the death statutes of this state. Recovery was sought by the insurance company for reimbursement of compensation it had paid under the judgment of the Industrial Accident Board, according to the Compensation Law, and the expenses of prosecuting the suit.

This is the second appeal. On the first trial a general demurrer was sustained to the plaintiff's petition, and on appeal the judgment was affirmed. 250 S. W. 476. Writ of error was granted by the Supreme Court, and the case was reversed by the Commission of Appeals. 267 S. W. 703. On the second trial, the case was submitted to a jury upon special issues, and on the verdict of the jury judgment was rendered for plaintiff Consolidated Underwriters, and two of the beneficiaries who had intervened, for $3,850, and that plaintiff Consolidated Underwriters recover of the intervener beneficiaries, the whole sum awarded by the verdict. Motion for a new trial was overruled, and the case is before us on appeal.

We do not deem it necessary to here make statement of the pleadings of the parties, but, as they are the same as on the former appeal, we make reference to our statement of them on the former appeal. 250 S. W. 476. Because of the disposition we have made of the case, it is not thought to be necessary to make a full statement of the facts disclosed by the record other than given in discussing the questions decided.

[1] On the first trial, appellant's general demurrer was sustained by the trial court, and we affirmed the judgment because, (1) as we thought, the statute (article 5246—47, Vernon's Ann. Civ. St. Supp. 1918), under which the suit was brought, was violative of the Constitution, in that its provisions were not expressed in the title of the act; and (2) we also held that, the insurance association, Consolidated Underwriters, having no valid authority to file the suit, the statutes of

---

⟠For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted February 9, 1927.

limitation continued to run as against the interveners, the heirs and beneficiaries of the deceased, until their formal filing of their pleas of intervention setting up their right to recover, which was more than two years, and more than four years, after the death of their ancestor, and their cause of action was barred. Both of these holdings were reversed by the Commission of Appeals. 267 S. W. 703. Appellant has again presented them for consideration on this appeal, insisting that we were correct in our holdings on said questions on the former appeal, and urging a reconsideration of them. The Supreme Court, in adopting the opinion of the Commission of Appeals, approved the holding of the Commission of Appeals on the questions discussed, and hence we are bound by them, and all assignments presenting said questions are overruled.

[2] The judgment will have to be reversed because of the misconduct of the jury. In its motion for a new trial, appellant attacked the verdict of the jury, asserting that same was not a lawful verdict, in that same was not arrived at in accordance with law, but that same was based upon a majority vote of the jury and a prior agreement of the jury to be bound thereby. In passing upon the motion, the court heard evidence, and the evidence is set out in appellant's bill of exception No. 2, and fully, and we think without dispute, sustains the contention of appellant. Each of the jurors who testified (two of them) said that the jury were wide apart in their opinions as to what amount appellees were entitled, ranging from $1,000 to $10,000; that the jurors were so far apart that they finally passed that question, and considered and answered all the other special issues, and then went back to the issue of damages (special issue No. 9), and that, after further and considerable effort to get together, and failure to do so, it was proposed that the majority of the jury should rule. That was put to a vote and carried, and all the jury agreed to be bound by the majority, except one, who, it is shown, never did so agree. After the jury had agreed to be bound by the majority, the majority settled the amount of damages at $3,850 by "splitting the difference between us lower fellows and the higher fellows," and that sum was written into the verdict. Both of the jurors who testified on the hearing of the motion for new trial testified that they did not favor that amount, and that they voted to return same as their verdict only because they had agreed to be bound by the majority, and that the majority fixed the sum at that amount. It is also made plain that the sum of $3,850 had at no time before the agreement to be bound by the majority been proposed, although various sums, more and less, had been proposed, and had been voted down.

The rule has long been well settled that, where there is a prior agreement to reach a verdict by lot, or like manner of calculation, the verdict will be set aside. It is too plain for cavil that the amount of damages here returned was not only affected by, but was the outcome of, the prior agreement to be bound by the decision of the majority and the manner employed by the majority to arrive at the sum so found. Article 2203 (5217), R. S. 1925; G. H. & S. A. Ry. Co. v. Brassell (Tex. Civ. App.) 173 S. W. 522; Southern Traction Co. v. Wilson (Tex. Com. App.) 254 S. W. 1104; Railway v. Roberts (Tex. Civ. App.) 196 S. W. 1004; Hovey v. Weaver (Tex. Civ. App.) 175 S. W. 1089; Moore v. Ivey (Tex. Com. App.) 277 S. W. 106; Railway v. Harvey (Tex. Com. App.) 276 S. W. 895; Id. (Tex. Com. App.) 278 S. W. 839; Western Union Tel. Co. v. Phillips (Tex. Civ. App.) 285 S. W. 665. Furthermore, it is shown by the testimony of the jurors who testified upon the hearing that one juror not only refused to be bound by the majority, but that he never did vote for the $3,850 returned as the verdict. The intent of the law—yea, its mandate—is that no verdict shall be returned in any cause except upon the concurrence of all the members of the jury trying the same. Article 2203 (5217), R. S. 1925.

[3] Appellant contends that, under the pleadings and the facts of the case, no liability against it is shown, and submits under its fifth assignment, which is:

"An employer, who for a time surrenders control of his equipment and servant to another, is not liable for a tort occurring during the time when he has no control over the servant, for during such period the servant is not the agent of the general employer, but of the one who then has the control of him,"

—that appellees' cause of action was against the Gulf, Colorado & Santa Fé Railway Company, and not the appellant.

That portion of appellees' petition going to show liability against appellant is:

"Plaintiff alleges that the injuries to the said Joe Singletary, deceased, for which compensation was and is payable as aforesaid, was caused under circumstances creating a legal liability against the defendant herein to pay damages in respect thereof, and the persons entitled to receive such compensation and to recover such damages have elected to accept the compensation accrued in the premises under the provisions of the Compensation Law of this state as aforesaid rather than to proceed at law against the defendants herein for the recovery of damages arising under the facts hereinafter alleged; and, this plaintiff having paid, and assumed to pay, the said compensation arising, it is entitled to prosecute this suit for its own benefit, and for the benefit of the said beneficiaries and any other persons who may be entitled to any recovery against the defendant herein. And the plaintiff now alleges the following as forming a predicate for the legal liability herein asserted.

"Plaintiff alleges that the Gulf, Colorado &

Santa Fé Railway Company, a corporation duly incorporated under the laws of the state of Texas, on and long prior to the 8th day of December, 1919, had, and still has, a line of railroad extending from Beaumont, in Jefferson county, Tex., to Longview, in Gregg county, Tex., passing through Jasper county, Tex., and through or near the town of Jasper in said county. That on and prior to the 8th day of December, 1919, the President of the United States had taken federal control of the said railroad, and · the same was under the control and operation of the Director General of the United States, under the acts of Congress of the United States.

"That, while the said Gulf, Colorado & Santa Fé Railway Company was the owner of said line of railroad as aforesaid, there was on said date, and long prior thereto, some character of arrangement or contract existing between the said railway company and the defendant, Kirby Lumber Company, whereby the defendant, Kirby Lumber Company, was granted the use of the said railroad tracks and the Y's and sidings at and near the town of Jasper, in Jasper county, Tex., and under said arrangement and contract aforesaid the defendant, Kirby Lumber Company, had become the proprietor, charterer, or hirer of said railroad and the tracks, Y's, and sidings in said county, and was on said date operating locomotives, cars, and trains thereon and thereover, and had been so operating such locomotives, cars, and trains for a number of years. And there was at said time likewise some character of arrangement or contract existing between the defendant, Kirby Lumber Co., and such Director General of the United States, whereby the defendant was granted the use of the said railroad tracks and Y's and sidings in said county and at and near the town of Jasper, or defendant had the permission thereof. That after the Director General of the United States commenced the operation of said railroad the defendant, Kirby Lumber Company, continued to use the said railroad and the Y's and sidings aforesaid, and continued to operate locomotives, trains, and cars thereon and thereover, whatever the arrangement with such Director General was, and such arrangement is well known to the defendant, Kirby Lumber Company.

"That on said date there was what is known as a Y and siding situated in said county near the town of Jasper, and forming parts of said railroad, or used in connection with the operation of said railroad both by the Director General of the United States and by the defendant, Kirby Lumber Company, and on said date, and long prior thereto, the defendant, Kirby Lumber Company, owned and operated over said Y and said siding its locomotives, cars, and trains, and on said date the agents and servants of the defendant, Kirby Lumber Company, were operating one of the locomotives belonging to the defendant over said siding and said Y located as aforesaid.

"That on and prior to the 8th day of December, 1919, the said T. B. Allen & Co., hereinabove referred to, the employer of Joe Singletary, deceased, had procured from the Director General of the United States, or his agents acting in the premises under the law, a freight car to be loaded by it with staves at said siding or upon said Y, and the said freight car had been so furnished to the said T. B. Allen & Co. for such purpose, and the said car was standing on the siding or on the Y

at said place, where it had been placed by those operating said railroad at said time, and was on said date being loaded with staves by the said T. B. Allen & Co. for the purpose of shipment over said line of railroad, and the said Joe Singletary, deceased, as such employé of T. B. Allen & Co., was in said freight car engaged in the work of loading the staves thereon and stacking the staves therein, and the defendant, Kirby Lumber Company, and its agents and servants, operating its said locomotive over and along said siding and Y, knew that the said freight car was thus standing on said siding or Y, and that the same had been placed there to be loaded with staves as aforesaid, and knew that the same was being loaded with staves, and knew that the employés of the said T. B. Allen & Co. were actually engaged in the work of loading said car as aforesaid, or, if they did not know all of said facts, they should have known the same in the exercise of ordinary care under all the facts, circumstances, and conditions as aforesaid, and they are charged with knowledge of all of said facts, or actually had knowledge of all of said facts, and said car was located where such cars were usually and customarily loaded with staves by said T. B. Allen & Co., when such staves were assembled for such loading.

"That, notwithstanding their knowledge of all of the said facts and circumstances as aforesaid, the agents and servants of the defendant operating said railroad as aforesaid, while operating the said locomotive belonging to the defendant as aforesaid, without any warning, negligently and carelessly propelled the said locomotive along the said siding and Y, and with great force and violence against the said freight car being loaded as aforesaid, so that the resulting impact was very great, and so that the said Joe Singletary, deceased, was violently thrown down upon and against the floor and sides of said car and the objects therein, whereby he was greatly injured, wounded, and bruised, and so that he died as a result of said injuries on or about the 4th day of January, 1920, and the injuries and death of the said Joe Singletary were the direct and proximate result of said negligence.

"That the said Joe Singletary, deceased, was a reasonably healthy and robust person of about 60 years of age, and was earning the sum of $16.50 per week, and would have continued to earn such amount or more, and he contributed his said earnings to the support of the said beneficiaries herein referred to, and would have continued to do so for the remainder of his lifetime and theirs, and deceased lived with said beneficiaries, and did the chores about the place, and contributed every way to the maintenance of said beneficiaries, and would have continued to so do, so that the said beneficiaries would have been entitled to recover as actual damages against the defendant the sum of $10,000, and so that this plaintiff is entitled to recover said sum under its rights provided by the terms of part II of the Workmen's Compensation Law of this state; that is to say, so that this plaintiff is entitled to recover against the defendant herein the full amount paid by it, and assumed to be paid by it as the compensation arising in the premises, together with all reasonable cost of enforcing such liability against the defendant herein. And it al-

leges that a reasonable cost for enforcing such liability would be the sum of $1,000.

"And so that this plaintiff is entitled to recover all actual damages arising in the premises, to the end that it may be reimbursed for such compensation and the cost of enforcing such liability, and to the end that the said beneficiaries and all parties entitled to recover such actual damages resulting from the negligence aforesaid may have the excess of any recovery that may be had over and above the amount of said compensation paid, and assumed to be paid, by this plaintiff and the cost of enforcing such liability, such excess to be apportioned among those entitled to receive the same.

"Wherefore, the premises considered, and defendant having already answered herein, the plaintiff prays that upon final trial hereof it have judgment against the defendant for said actual damages in the sum of $10,000, for the joint use and benefit of this plaintiff and said beneficiaries and all parties entitled to share in said recovery under what is known as the death statute of this state, and in accordance with the provisions of part II of the Compensation Act of this state, and it prays for apportionment according to law, and for all costs of suit, and for general and special relief, legal and equitable."

The facts are: The Gulf, Colorado & Santa Fé Railway Company owned, was in the possession of, and was operating, the line of railway upon which the injury occurred. The deceased, Singletary, who was an employé of T. B. Allen & Co., was working in a box car standing on one leg of the Y of the railroad, loading staves in the box car at the time the injury occurred. The log train, that is, the cars on which the logs were loaded, and the engine pulling the log train, and the caboose attached to said train, were all the property of the Kirby Lumber Company. The persons (engineer, fireman, and brakemen) who were at the time of the injury engaged in the operation of said log train were the general employés of the Kirby Lumber Company, but the conductor in charge of said train was the employé of the Gulf, Colorado & Santa Fé Railway Company. The persons operating the log train at the time of the injury (the engineer, fireman, and brakemen) took their orders from, and were under the complete, absolute, and full control of, the Santa Fé conductor employed by the Gulf, Colorado & Santa Fé Railway Company. When the Kirby Lumber Company's log trains were operated on and over the Gulf, Colorado, & Santa Fé Railway Company's line, they were under the absolute control of the conductor of the Gulf, Colorado & Santa Fé Railway Company. The Kirby Lumber Company had nothing whatever to do with the movement of the log train; it being operated in charge of a Gulf, Colorado & Santa Fé Railway Company conductor, under the same rules, signals, orders, and requirements as if it were a standard Gulf, Colorado & Santa Fé train. The injury from which Singletary died was caused by the engine of the Kirby Lumber Company's log train bumping into the box car standing on one leg of the railroad Y, in which Singletary was at the time working. The Kirby Lumber Company had a log camp and tram at Blox, up the Gulf, Colorado & Santa Fé Railway Company's line from where the injury occurred, and log trains were at the time of the injury, and for a long time prior thereto had been, operated on and over the Gulf, Colorado & Santa Fé Railway Company's line from the log tram at Blox down to and at the point where the injury was inflicted.

Appellees alleged that there was some kind of contract between the Gulf, Colorado & Santa Fé Railway Company and the Kirby Lumber Company, by which, and under which, the log trains of the Kirby Lumber Company were received from the Kirby Lumber Company's tram onto and operated over the Gulf, Colorado & Santa Fé Railway Company's line, but there is no sort of proof as to there being any such contract, nor what were the terms of the contract, if any existed. The proof merely shows that the log trains were operated on and over the Gulf, Colorado & Santa Fé Railway Company's line of road in charge of a Gulf, Colorado & Santa Fé Railway Company's conductor, under the rules and regulations and complete control of the Gulf, Colorado & Santa Fé Railway Company, through its said conductor, and that, when the log train left the Kirby Lumber Company's tram, and was placed on the Gulf, Colorado & Santa Fé Railway Company's line of road, though manned by general employés of the Kirby Lumber Company, it was completely under the control of, and in the charge of, a conductor employed and furnished by the Gulf, Colorado & Santa Fé Railway Company, and run under the same rules, signals, orders, and control exercised by the Gulf, Colorado & Santa Fé Railway Company of a regular standard Gulf, Colorado & Santa Fé Railway Company train.

Under these facts, appellant contends that appellee's cause of action, if any it had, was against the Gulf, Colorado & Santa Fé Railway Company, while appellees maintain that appellant is liable. A majority of the court agree with appellees, and say that, as the train and engine belonged to the Kirby Lumber Company, and the persons operating the train, other than the conductor, were employés of the Kirby Lumber Company, and the business being conducted at the time of the injury was that of the Kirby Lumber Company, in which the Gulf, Colorado & Santa Fé Railway Company had no interest, then under the holdings in Cunningham v. International Railway Co., 51 Tex. 503, 32 Am. Rep. 632; Railway Co. v. Warner, 88 Tex. 642, 32 S. W. 868; Burton v. Railway Co., 61 Tex. 526; Magnolia Petroleum Co.

v. City of Port Arthur (Tex. Civ. App.) 209 S. W. 803; Byrne v. Kansas City, F. S. & M. R. Co. (C. C. A.) 61 F. 605, 24 L. R. A. 693, and other authorities, appellant was liable.

The writer is unable to agree to this conclusion. I am unable to agree with my brethren that the cases mentioned, supra, under the facts support their conclusion, but, to the contrary, I think they support appellant's contention. In cases such as the one at bar, as I understand the decisions, the right of control is the main, if not the conclusive, test in determining the question of master and servant. It will be remembered that there is nothing in the record to show by what right the log train was on the line of the Gulf, Colorado & Santa Fé Railway Company, and, as it was in the charge of a conductor of the Gulf, Colorado & Santa Fé Railway Company, it should be presumed for the time being it was the train of the Gulf, Colorado & Santa Fé Railway Company. Railway v. Miller, 98 Tex. 273, 83 S. W. 182. The undisputed evidence shows that the Kirby Lumber Company had no control whatever of the train at the time the injury occurred. W. D. Johnson, the conductor who had charge of the train, testified:

"I live at Silsbee. I am a conductor for the Santa Fé Railroad Company. I am on a mixed run between Silsbee and Saratoga. I have been a pilot on one of these log trains up and down the Santa Fé. I was on that job in December, 1919. That train was pulled by engine 71. * * * I was in charge of the train on the occasion it is claimed that Mr. Singletary was hurt. * * * When the Kirby Lumber Company trains are on the Santa Fé tracks, they are absolutely under the jurisdiction of the conductor. The Santa Fé Railroad Company employs the conductor. The Kirby Lumber Company has nothing whatever to do with the movement of those trains when they are on the Santa Fé tracks. * * * When we leave the Kirby tram track and head over the Santa Fé track, we are absolutely under the same requirements as if we were running a standard train on the Santa Fé railroad, with the same rules and signals and orders governing us as if we were running a standard Santa Fé train. In other words, every movement is under the control of the G. C. & S. F. absolutely."

L. F. Neguez, the engineer who was running the engine at the time of the injury, testified:

"When I was running on the Santa Fé tracks, I got my orders from Conductor W. D. Johnson."

It thus appearing that the injury occurred on the track of the Gulf, Colorado & Santa Fé Railway Company in the operation of a train in charge of the Gulf, Colorado & Santa Fé conductor, running under the orders and regulations of the Gulf, Colorado & Santa Fé Railway Company, no liability against the appellant, Kirby Lumber Company, is shown. For appellant to be liable, it must have had control of the train and those operating it on the occasion of the injury. The fact that it owned the engine and cars composing the train, and that the engineer, fireman, and brakeman were its general employés, is not sufficient to make it liable when, on the occasion of the injury, the train and the said employés were in the absolute control of, and acting under the orders of another, to wit, the Gulf, Colorado & Santa Fé Railway Company, on said company's line of railway. Cunningham v. Railway, 51 Tex. 503; Burton v. Railway, 61 Tex. 526; G., C. & S. F. Railway Co. v. Miller, 98 Tex. 270, 83 S. W. 182; G., C. & S. F. Railway Co. v. Gaskill, 103 Tex. 441, 129 S. W. 345; Cunningham & Ellis v. Moore, 55 Tex. 377, 40 Am. Rep. 812; Brady v. C. & G. W. R. Co. (C. C. A.) 114 F. 100, 57 L. R. A. 712; Garven v. Railway Co., 100 Mo. App. 617, 75 S. W. 193; Byrne v. Railway Co., (C. C. A.) 61 F. 605, 24 L. R. A. 693; Manning v. Railway Co., 107 Tex. 546, 562, 563, 181 S. W. 687; Standard Oil Co. v. Anderson, 212 U. S. 218, 29 S. Ct. 252, 53 L. Ed. 485.

To my mind, the case of G. C. & S. F. Railway Co. v. Miller, supra, is conclusive of the question. The facts of that case are quite similar to the facts of the instant case. Miller was hurt upon the track of the Gulf, Colorado & Santa Fé Railroad at Dougherty, Indian Territory, by an engine which was owned by the Atchison, Topeka & Santa Fé Railway Company, and was operated by its employés over the tracks of the Gulf, Colorado & Santa Fé Railway Company. It was contended by the Gulf, Colorado & Santa Fé Railway Company that it was not liable, but that the liability was against the Atchison, Topeka & Santa Fé Railway Company. Miller had judgment, which was affirmed by the Court of Civil Appeals, and carried to the Supreme Court on writ of error. In affirming the judgment, Judge Williams says:

"It is a sound proposition, often applied, that the corporation, shown to be the owner of a railroad in the operation of which a wrong has been done, is presumed to be in the possession and operation of its road. Ferguson v. Wisconsin Cent. Ry. Co. [63 Wis. 145] 23 N. W. 123; Walsh v. Mo. P. Ry. Co. [102 Mo. 582] 14 S. W. 873 [15 S. W. 757]; Peabody v. Oregon, etc., R. Co., 21 Or. 121 [26 P. 1053, 12 L. R. A. 823]. The fact that the defendant was operating its road is not left to presumption, but is conceded; and the contention is then made that it was not operating this engine, merely because it belonged to, and was in the immediate charge of the servants of another corporation. But these facts do not tend to show that those servants, while on defendant's line, were not completely under its control, and the other evidence, so far as it goes, tends to show that they were. * * * The defendant is therefore as fully responsible to plaintiff for the injury inflicted in the moving of this engine as it would have been had

it belonged to it and been in charge of its own servants."

In the case at bar Singletary died from the effects of an injury received on the track of the Gulf, Colorado & Santa Fé Railway company, not the track of the Kirby Lumber Company, by an engine which was owned by the Kirby Lumber Company and operated by the employés, except the conductor, of the Kirby Lumber Company. The conductor of the log train was an employé of the Gulf, Colorado & Santa Fé Railway Company, and acting for it, and the undisputed evidence is that he was controlling the movements of the train and engine at the time of the injury to Singletary. This brings the case squarely within the holding in the Miller Case and rules same.

In Wallace v. Southern Cotton Co., 91 Tex. 18, 40 S. W. 399, where the appellee sought to avoid liability on the ground that it was not the master of the injured employé, the court, in holding that the exercise of control was determining, said:

"If, however, the Southern Cotton Oil Company exercised control over the manner in which Davis was to do the work, or over the means by which it was to be done, or if the persons engaged in the work with Davis were under the control and management of said company, then Davis was but its employé, and Wallace was likewise the servant of the said company by virtue of his employment by Davis."

Whatever may have been the arrangement between the Kirby Lumber Company and the Gulf, Colorado & Santa Fé Railway Company as to the running of log trains over the line of the railway company, it left the control of the movements of the train and the persons operating same in the Gulf, Colorado & Santa Fé Railway Company, so as to insure no conflict, and to obviate delay and danger in the operation of its own scheduled trains. Johnson, the conductor of the train, was unquestionably in the employ of the Gulf, Colorado & Santa Fé Railway Company, which selected him, paid him his wages, and had the right to discharge him for incompetency, misconduct, or other cause. In order for it to appear that Johnson was the servant of the Kirby Lumber Company, it must be shown that his relation as an employé or servant of the Gulf, Colorado & Santa Fé Railway Company for the time being was suspended, and a new relation between him and the Kirby Lumber Company, appellant, had been created. Standard Oil Co. v. Anderson, 212 U. S. 218, 29 S. Ct. 252, 53 L. Ed. 485. The evidence in this case does not warrant that this changed relation had come into existence, but, to the contrary, it shows that he, as a conductor of the Gulf, Colorado & Santa Fé Railway Company, had and exercised absolute control of the train and the persons operating it.

In Cunningham v. Railway, supra, Judge Bonner stated the question for decision thus:

"Is the defendant company liable in damages for the act of Douglas, Brown, Reynolds & Co., independent construction contractors, for an alleged negligent management of one of defendant's trains, used and controlled by Douglas, Brown, Reynolds & Co., for construction purposes, upon that part of the road not completed and delivered to defendant?"

In answering this question, he said:

"That Douglas, Brown, Reynolds & Co. may have used, as a means to assist in carrying out their contract to construct the road, a train belonging to the defendant company, and operated by servants primarily employed by it, would not, of itself, make the company liable for their acts, *unless it had the immediate control and management of the train.*" (Italics ours.)

Applying this language here, all the evidence shows that the Kirby Lumber Company did not have the immediate control and management of the train, but that the control and management of same was wholly in the Gulf, Colorado & Santa Fé Railway Company.

The holding in Cunningham v. Railway was cited with approval in Cunningham & Ellis v. Moore, supra, where Judge Bonner says:

"It is a well settled principle, founded on reason and supported by abundant authority, that the relation and liability of master depends upon the right of control over the servant."

Brady v. C. & G. W. R. Co., supra, was a suit brought for damages for the death of a servant of the defendant railway. The injury was received by striking a car negligently placed on the track of the St. Paul Union Depot Company. In holding that an instructed verdict for the defendant was proper, Judge Sanborn said:

"The question, then, is whether at the time this car was set upon the track, and the switchmen of the depot company failed to turn the switches, they were the agents or servants, or their master was the agent or servant of the defendant, so that the latter may be held for their carelessness under the doctrine of respondeat superior. This question must be answered by a determination of the question whether or not the defendant had the power to command these switchmen, and to direct them what to do and where to do it, when that car was set upon the track. *The power of control is the test of liability, under the maxim respondeat superior.* If the master cannot command the alleged servant, then the acts of the latter are not his, and he is not responsible for them. If the principal cannot control and direct the alleged agent, then *he is not his agent,* and the principal is not liable for his acts or his omissions. In such case the maxim respondeat superior has no application, because there is no superior to respond. *In an action against an alleged master or principal for the act of his alleged servant or agent under the maxim respondeat superior, there can be no recovery in*

*tha absence of the right and power in the former to command or direct the latter in the performance of the act charged, because in such a case there is no superior to answer* [citing many authorities]." (Italics ours.)

In Garven v. Railway Co., supra, it is said:

"The plaintiff was a fireman in the employ of the Chicago & Alton Railway Company, and while on one of its engines, running on the tracks of another road, viz. the Union Pacific Railway Company, it collided with one of defendant's trains, then being run over the Union Pacific track, whereby plaintiff was seriously injured. The plaintiff prevailed in the trial court. The evidence disclosed that the defendant runs its trains west out of Kansas City, Mo., over the tracks of the Union Pacific Railway Company, under a contract between them, and that the engine on which the plaintiff was riding was a switch engine, engaged in switching, and at the time was on the same track. There was evidence tending to show that defendant's trains, while running out of Kansas City over the tracks of the Union Pacific, were under the control, direction, and orders of the latter company. There was also evidence given, by the general superintendent of the latter company, that such trains were run under the joint rules of that company and the defendant; that is to say, under the rules of that company, adopted by the defendant, and issued by it jointly with that company. Defendant asked a peremptory instruction that plaintiff could not recover.

"It is undoubtedly true that where some third person is injured by the negligence of the servants and agents of a master, yet if at the time of the act of negligence, such servants are under the control and orders of another, the master of the servants cannot be held for such negligence. *The authority at the time to control is the test* [citing many authorities]." (Italics ours.)

I will not further quote from the authorities cited supra, nor cite other authorities to the same holding. Many could be cited. Under the facts and the law as I understand it applied to the facts, no liability against appellant is shown, and I think the judgment should be reversed and here rendered for appellant.

Other questions are presented by appellant, but, as they may not arise on another trial, we do not deem it necessary to discuss them. Under the holding of the majority of the court, the judgment is reversed and the cause remanded.

HIGHTOWER, C. J. As stated by Mr. Justice O'QUINN, we are all agreed that the judgment of the trial court in this case must be reversed because of the misconduct of the jury pointed out in Judge O'QUINN's opinion. And while it may not be necessary to do so, I wish to state very briefly why I cannot concur with Judge O'QUINN in the view that appellant is not liable for the negligence of its engineer and fireman, who were in charge of appellant's engine at the time the injury to Singletary occurred.

It is true, as pointed out in Judge O'QUINN's opinion, that all of the witnesses who testified on the point stated, substantially, that, when appellant's log train was being operated over the tracks of the Gulf, Colorado & Santa Fé Railway Company, such train and its crew were under the control and supervision of Conductor Johnson, who was an employé of the Gulf, Colorado & Santa Fé Railway Company, and was in no manner connected with appellant, Kirby Lumber Company. It is plain, however, to me that the employés of the Kirby Lumber Company and its log train, on the occasion in question, had not lost their relation as employés of the Kirby Lumber Company at the time of the injury to Singletary in question. This record shows without dispute that every member of the crew of the Kirby Lumber Company's log train was employed and paid by that company, and none of them sustained any relation whatever to the Gulf, Colorado & Santa Fé Railway Company, nor were any of them hired to, or lent to, the Gulf, Colorado & Santa Fé Railway Company for any purpose at the time of the injury to Singletary. The engine that bumped into the car and caused the injury to Singletary had gone in on the Y at Jasper in furtherance of the business of appellant, Kirby Lumber Company, and at that time Conductor Johnson was not even upon the engine, but, on the contrary, he was standing on the depot platform in the town of Jasper, some several hundred feet distant from where the injury to Singletary occurred. Johnson was not giving any orders to appellant's engine crew at the time, and they had gone in on the Y merely for the purpose of turning the engine around, with a view of coming back on the main line and moving the Kirby Lumber Company log train. I think that it is clear from the testimony of Conductor Johnson himself that, instead of his having the control and management of the Kirby Lumber Company's engineer and fireman in handling appellant's log train on occasions like the one in question, he (Johnson) was under the direction of the crew of appellant's log train. On page 68 of the statement of facts, Conductor Johnson, after stating that "the Kirby Lumber Company has nothing whatever to do with the movement of those trains when they are on the Santa Fé tracks," further testified that "all they do (meaning appellant's train crew) is to tell you (meaning the conductor) where they want to go; where they want the cars to go."

It is clear from this that Conductor Johnson meant to say that it was not up to him to direct the employés and servants of appellant what to do or where to go when running over the track of the railway company. He was simply there, in all probability, to look after the protection of the railway company's property, but not to direct the employés and servants of the Kirby Lumber

Company where to go or what they should do. On the contrary, such employés and servants told the conductor where they wanted to go, and what they wanted to do when they were running appellant's train over the railway company's tracks, and it is clear, I think, from the testimony of Conductor Johnson that he was expected to and did comply with the wishes and orders of appellant's train crew as to where the log train should move and what should be done. It is true that Conductor Johnson repeats several times in his testimony that appellant's log train and its crew were under his sole supervision and jurisdiction, but, when one analyzes his testimony and the meaning he intended to convey, it is clear to me that none of appellant's employés and servants, whatever the arrangement it had with the Gulf, Colorado & Santa Fé Railway Company with reference to the use of its tracks, were under the control and management of Conductor Johnson. I shall not undertake to distinguish this case on its facts from those relied upon by appellant, because I think it is clear from a reading of those authorities that the conclusions there reached are not inconsistent with my views on this question, and do not support appellant's claim of nonliability in this case.

WALKER, J. I concur with my Brethren in the reversal of this case and with Mr. Chief Justice HIGHTOWER on the dissent voiced by Mr. Justice O'QUINN.