**KIRBY LUMBER CO. v. CONSOLIDATED UNDERWRITERS et al. (No. 777–4765.)**

Commission of Appeals of Texas, Section B. May 11, 1927.

**1. Railroads ⊜⇒260—Lumber company, operating locomotive injuring third person's employé, held not liable, where operation was under control of railroad.**

In insurer's action under right of subrogation for death of employé of insured through alleged negligence of defendant lumber company in operating locomotive on tracks of railroad company, evidence that conductor of railroad company had full control of train and locomotive *held* to require a summary instruction in favor of the lumber company.

**2. Railroads ⊜⇒260—Lumber company, negligently operating locomotive, not liable where railroad company retained right of full control.**

Lumber company, operating locomotive on tracks of railroad company and fatally injuring employé of third party, was not liable, where railroad company's conductor had authority to control movements of locomotive; right or power to control operations determining liability, whether control was actually exercised or not.

---

⊜⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Error to Court of Civil Appeals of Ninth Supreme Judicial District.

Action by the Consolidated Underwriters and others against the Kirby Lumber Company, wherein beneficiaries of a deceased employé intervened as parties plaintiff. Judgment for plaintiffs was reversed and remanded (289 S. W. 134), and both parties named bring error. Judgment reformed and rendered, and, as so reformed and rendered, affirmed.

G. E. Richardson, of Jasper, and E. J. Fountain, Jr., and Andrews, Streetman, Logue & Mobley, all of Houston, for plaintiff in error.

O. A. Lord, of Beaumont, for defendants in error.

SPEER, J. Consolidated Underwriters, who was the insurer of the T. B. Allen Company under the Workmen's Compensation Law (Vernon's Ann. Civ. St. 1925, arts. 8306–8309), having paid the award of the Industrial Accident Board to the beneficiaries of Joe Singletary, deceased, an employé of the Allen Company, sued the Kirby Lumber Company, asserting its statutory right of subrogation, alleging that Singletary was killed through the negligence of the Kirby Lumber Company in operating a railroad locomotive over a certain track belonging to the Gulf, Colorado, & Santa Fé Railway Company. The cause was submitted to a jury, and upon a finding that the employés of the defendant lumber company operating the locomotive in question were guilty of negligence resulting in the death of Singletary, the trial court entered judgment for the plaintiff insurance company and certain intervening beneficiaries of the deceased.

Upon appeal by the lumber company, the cause was reversed and remanded for certain misconduct of the jury, but there was a disagreement amongst the justices upon the liability of the Kirby Lumber Company; a majority holding that the engine whose movements resulted in the death of Singletary was being operated by the employés of the lumber company, while Associate Justice O'Quinn was of the opinion that no liability was shown. (Tex. Civ. App.) 289 S. W. 134. Following the usual practice, a writ of error has been granted to both parties, and, while several interesting questions are presented, yet, in the view we have taken of the case, our conclusion upon the one point of dissent above referred to renders unnecessary a consideration of any of them save the point of liability under the undisputed evidence.

The point for decision is this: Is the Kirby Lumber Company liable for the negligence of the operatives of the engine causing the death of Singletary under the following facts? Justice O'Quinn thus states the facts for the majority:

"The Gulf, Colorado & Santa Fé Railway Company owned, was in the possession of, and was operating the line of railway upon which the injury occurred. The deceased, Singletary, who was an employé of T. B. Allen & Co., was working in a box car standing on one leg of the Y of the railroad, loading staves in the box car, at the time the injury occurred. The log train—that is, the cars on which the logs were loaded—and the engine pulling the log train and the caboose attached to said train were all the property of the Kirby Lumber Company. The persons (engineer, fireman, and brakeman) who were at the time of the injury engaged in the operation of said log train were the general employés of the Kirby Lumber Company, but the conductor in charge of said train was the employé of the Gulf, Colorado & Santa Fé Railway Company. The persons operating the log train at the time of the injury (the engineer, fireman, and brakemen) took their orders from, and were under the complete, absolute, and full control of, the Santa Fé conductor employed by the Gulf, Colorado & Santa Fé Railway Company. When the Kirby Lumber Company's log trains were operated on and over the Gulf, Colorado & Santa Fé Railway Company's line, they were under the absolute control of the conductor of the Gulf, Colorado & Santa Fé Railway Company. The Kirby Lumber Company had nothing whatever to do with the movement of the log train; it being operated in charge of a Gulf, Colorado & Santa Fé Railway Company conductor, under the same rules, signals, orders, and requirements as if it were a standard Gulf, Colorado & Santa Fé train. The injury from which Singletary died was caused by the engine of the Kirby Lumber Company's log train bumping into the box car standing on one leg of the railroad Y, in which Singletary was at the time working. The Kirby Lumber Company had a log camp and tram at Blox, up the Gulf, Colorado & Santa Fé Railway Company's line from where the injury occurred, and log trains were at the time of the injury, and for a long time prior thereto had been, operated on and over the Gulf, Colorado & Santa Fé Railway Company's line from the log tram at Blox down to and at the point where the injury was inflicted.

"Appellees alleged that there was some kind of contract between the Gulf, Colorado & Santa Fé Railway Company and the Kirby Lumber Company, by which and under which the log trains of the Kirby Lumber Company were received from the Kirby Lumber Company's tram onto and operated over the Gulf, Colorado & Santa Fé Railway Company's line, but there is no sort of proof as to there being any such contract, nor what were the terms of the contract, if any existed. The proof merely shows that the log trains were operated on and over the Gulf, Colorado & Santa Fé Railway Company's line of road in charge of a Gulf, Colorado & Santa Fé Railway Company's conductor, under the rules and regulations and complete control of the Gulf, Colorado & Santa Fé Railway Company, through its said conductor, and that, when the log train left the Kirby Lumber Company's tram, and was placed on the Gulf, Colorado & Santa Fé Railway Company's line of road, though manned by general employés of the Kirby Lumber Company, it was completely under the control

of, and in the charge of, a conductor employed and furnished by the Gulf, Colorado & Santa Fé Railway Company, and run under the same rules, signals, orders, and control exercised by the Gulf, Colorado & Santa Fé Railway Company of a regular Gulf, Colorado & Santa Fé Railway Company train."

In support of this statement, Justice O'Quinn sets forth the testimony of W. D. Johnson, train conductor, as follows:

"I live at Silsbee. I am a conductor for the Santa Fé Railroad Company. I am on a mixed run between Silsbee and Saratoga. I have been a pilot on one of these log trains up and down the Santa Fé. I was on that job in December, 1919. That train was pulled by engine 71. * * * I was in charge of the train on the occasion it is claimed that Mr. Singletary was hurt. * * * When the Kirby Lumber Company trains are on the Santa Fé tracks, they are absolutely under the jurisdiction of the conductor. The Santa Fé Railroad Company employs the conductor. The Kirby Lumber Company has nothing whatever to do with the movement of those trains when they are on the Santa Fé tracks. * * * When we leave the Kirby tram track and head over the Santa Fé track, we are absolutely under the same requirements as if we were running a standard train on the Santa Fé Railroad, with the same rules and signals and orders governing us as if we were running a standard Santa Fé train. In other words, every movement is under the control of the Gulf, Colorado & Santa Fé absolutely."

Chief Justice Hightower makes no objection to the statement of the facts above shown, but states his interpretation of Johnson's testimony as follows:

"The engine that bumped into the car and caused the injury to Singletary had gone in on the Y at Jasper in furtherance of the business of appellant, Kirby Lumber Company, and at that time Conductor Johnson was not even upon the engine, but, on the contrary, he was standing on the depot platform in the town of Jasper, some several hundred feet distant from where the injury to Singletary occurred. Johnson was not giving any orders to appellant's engine crew at the time, and they had gone in on the Y merely for the purpose of turning the engine around, with a view of coming back on the main line and moving the Kirby Lumber Company log train. I think that it is clear from the testimony of Conductor Johnson himself that, instead of his having the control and management of the Kirby Lumber Company's engineer and fireman in handling appellant's log train on occasions like the one in question, he (Johnson) was under the direction of the crew of appellant's log train. On page 68 of the statement of facts, Conductor Johnson, after stating that 'the Kirby Lumber Company has nothing whatever to do with the movement of those trains when they are on the Santa Fé tracks,' further testified that 'all they do (meaning appellant's train crew) is to tell you (meaning the conductor) where they want to go; where they want the cars to go.'"

The Chief Justice then concludes:

"It is clear from this that Conductor Johnson meant to say that it was not up to him to direct the employés and servants of appellant what to' do or where to go when running over the track of the railway company. * * * I think, from the testimony of Conductor Johnson that he was expected to and did comply with the wishes and orders of appellant's train crew, as to where the log train should move and what should be done."

We agree with the views of Justice O'Quinn. We think the testimony is undisputed that the engine, at the time of the collision resulting in the death of Singletary, was being operated under the control of the Gulf, Colorado, & Santa Fé Railway Company, and not the Kirby Lumber Company. The majority of the Court of Civil Appeals have held that, as the train and engine belonged to the Kirby Lumber Company, and the persons operating the train other than the conductor were employés of the Kirby Lumber Company, and the business being conducted at the time of the injury being that of the lumber company, in which the railroad company had no interest, the law would hold such lumber company liable for the negligence of the employés.

[1, 2] But it cannot be said that the railroad company "had no interest" in what was being done at the time of the accident. The Gulf, Colorado & Santa Fé Railway Company had a very substantial interest in the control of all engines and trains passing over its tracks, and whatever arrangement it may have had with the Kirby Lumber Company for their mutual benefit, it was a most reasonable and to be expected provision that it should have absolute control over such movements. At all events, under the undisputed evidence, the railway company did retain the right to such control. The testimony of Conductor Johnson is unequivocal. The engineer, the fireman, and brakemen on the train, employés of the Kirby Lumber Company, all testified to the same effect, and such testimony is undisputed, unless it can be said, as indicated by Chief Justice Hightower, that the testimony of Conductor Johnson would authorize a different conclusion. But we cannot agree with this interpretation. This witness testified:

"All they do is to tell you where they want to go—where they want the cars to go."

He does not in any manner weaken his pointed words that "every movement is under the control of the Gulf, Colorado & Santa Fé absolutely." It was no more than if he had referred to a shipper's right to name the destination of his goods or car. For the Kirby Lumber Company thus through its employés in this case to tell the conductor "where they want to go," or "where they want the cars to go," does not at all imply authority over the conductor, but, on the contrary, clearly implies the conductor's authority over the movement of the train or its engine. If, as

argued by the Chief Justice, Conductor Johnson "was under the direction of the crew" of the Kirby Lumber Company's log train, then, since the crew' were operating the engine in question, what could have been the necessity or reason for the crew's making known to the conductor their wants with reference to the disposition of the cars? Such information could only be required upon the theory that the conductor had the right to control the movement of the cars, and under all the authorities, and reason underlying the rule, it is the right or power to control that determines liability whether such control is actually exercised in the given case or not.

In this case, if the servants of Kirby Lumber Company at the time of the accident were under the control and orders of another, the Kirby Lumber Company cannot be held for their negligence; this for the very good reason that the doctrine of respondeat superior could not apply in such a case, for the Kirby Lumber Company was not the superior at the time, the right and power of control being indisputably in the Gulf, Colorado & Santa Fé Railway Company. It is unnecessary to cite authorities beyond those cited in the opinion of Justice O'Quinn. The Kirby Lumber Company requested a summary instruction in its favor, and in its application for a writ of error complains of its refusal. We think this assignment of error should be sustained, and that such instruction should have been given.

We therefore recommend that the judgment of the Court of Civil Appeals, reversing and remanding the cause for another trial, be reformed and corrected, so as to render judgment in favor of plaintiff in error Kirby Lumber Company, and, as thus reformed and rendered, that it should be affirmed.

GREENWOOD and PIERSON, JJ. Judgment of the Court of Civil Appeals reformed ·so as to render judgment for Kirby Lumber Company, and judgment of the Court of Civil Appeals otherwise affirmed, as recommended by the Commission of Appeals.